CURTIS H. GLOVER, Adm'r d. b. n., of BENNETT FLOWERS v. J. N. FLOWERS et. al.

*Joinder of Actions—Jurisdiction—Irregularity—Statute Limitations — Administration — Fraud—Evidence —Depositions — New Trial*

1. Where a special proceeding was instituted by an administrator for license to sell lands and was transferred to the Civil Issue Docket to be tried upon issues joined, and thereafter the plaintiff, without objection, was allowed to amend his complaint by alleging fraud in obtaining a former decree in another suit, where the defendants claimed title, and an amended answer was filed and issues also joined thereon, which were tried with the others; *Held*, that this procedure was very irregular, and ought not to have been permitted, but as there was no opposition to it and the Court had jurisdiction, its action might be upheld.

2. Prior to the enactment of the statute—now *The Code*, § 1433—there was no statutory bar to proceedings against the heir to subject descended lands to the payment of the ancestor's debts. In this respect the administration of estates before July, 1869, is governed by the law then in force.

3. Where, in an action to set aside the judgment in a former suit for fraud,. proof was offered tending to show that the maker of a deed in trust (which was the foundation of the judgment) was insolvent, that the debt secured was not *bona fide*, that part of the property was perishable, and the debtor was permitted to retain possession, that the parties secured were members of a family, and that the administrator of the debtor, who was a party to the suit was also a relative, and knew all the parties, and had an opportunity to ascertain the facts but made no resistance; *Held*, to be evidence, and strong evidence, to go to the jury on the issue of fraud.

4. Where there was a dispute between counsel as to whether there was evidence introduced on a controverted point, and the Court could not remember how the fact was; *Held*, that it was not error to tell the jury that they might determine whether there was such evidence before them, and if there was they might consider it.

5. Exceptions to evidence taken by depositions should be passed upon before the trial.

6. To entitle a party to a new trial upon the ground of admission of incompetent evidence, it should appear that the objecting party suffered, or might have suffered, prejudice thereby.

7. The former ruling in this case—95 N. C., 57—is affirmed.

This is a CIVIL ACTION, which was tried before *Avery, J.,* at February Term, 1888, of WILSON Superior Court.

Bennett Flowers died intestate, in October of 1867, in the county of Wilson, and in the same month Edwin Fulghum was appointed and qualified as administrator of his estate. The latter, without completing the administration, died in December of 1880, and the plaintiff was appointed administrator *de bonis non* of the estate of the intestate Flowers and qualified on the 19th of August, 1881.

In 1866 William Peel, as guardian of Kizziah Peel, held the single bond of Bennett Flowers for $800, with interest thereon from the 26th of May, 1860. The said Kizziah having become of age the bond became her property absolutely. She intermarried with D. B. Eatman, on the 15th of May, 1875, and afterwards, on the 19th of August, 1881, she obtained judgment against the present plaintiff administrator upon the bond mentioned for the amount thereof.

This is a special proceeding brought in the Superior Court named by the above mentioned administrator *de bonis non,* to obtain a license to sell the land of his intestate to make assets to pay the above mentioned judgment and any other debts of his intestate. The defendants are the heirs at law of the said in testate, except the husbands of certain of them, and his surviving widow.

In an amended complaint, it is alleged that on the 28th of December, 1866, the intestate, with the intent to hinder, delay and defraud his creditors, and especially the said Peel, guardian above named, executed a deed of trust to Alfred Thompson, whereby he undertook to convey a valuable tract of land and other personal property therein specified to secure the payment of a false and pretended debt therein de-

scribed in favor of John W. Williams for the sum of $1027.69 due on the 17th of November, 1858; that the trustee mentioned refused to accept and execute the trust sought to be created by the deed, wherefore the said John W. Williams brought his suit in the late Court of Equity, in the county named, to the Fall Term thereof of 1867, against the heirs at law of the said intestate, Edwin Fulghum, administrator of his estate, and Alfred Thompson named in the deed as trustee. In his bill he alleged his debt, the deed of trust to secure the same, the property therein specified, that the administrator had received the rents and profits of the land and disposed of the personal property mentioned in the deed, &c., &c., and that the said Thompson refused to accept the trust created by the deed, &c., and he prayed that a trustee be substituted for him, &c., &c. The defendants heirs at law answered admitting the debt—indeed all the allegations of the bill. The defendant Thompson answered saying that he never accepted the trusteeship and declined to do so. The defendant Fulghum, administrator, suffered judgment *pro confesso* to be entered as to him and made no defence whatever.

The Court decreed that Henderson H. Williams be substituted as trustee, with power to execute the trust; that he was entitled to the possession of the land specified in the deed of trust and also the personal property ; that the said Thompson and the said administrator convey to him the personal property and the increase thereof, and that the said Thompson and the heirs at law convey the legal title of the land to him, and that the decree operate as a conveyance, &c., &c. John W. Williams was the father of the surviving widow of the intestate, and Henderson H. Williams, the substituted trustee, was his brother.

The substituted trustee sold the land—278 acres—for $278, on the 18th of September, 1868, and conveyed the same to John W. Williams, who conveyed the same to Virginia

Flowers, the said surviving widow, on the 6th of August, 1869. It is alleged that the deed of trust mentioned in the suit in equity and the decree therein, the sale of the land, the conveyance thereof, were "parts of one and the same fraudulent family arrangement, devised to defraud creditors," &c.; that all the property of the intestate was embraced by the said deed; that from the time of its execution until his death he was utterly insolvent, leaving out of view the property so conveyed; that the administrator Fulghum, in his lifetime, never took any steps to sell the land mentioned to make assets to pay debts due from his intestate, although the personal estate was manifestly insufficient to pay the same, and that the land was worth $2,000.

The defendants deny all the allegations of fraud and plead the decree in equity appointing the substituted trustee, as an estoppel of record upon the plaintiff, and "for further defence the defendants say that no claim or demand was made for the debt of their ancestor within seven years next after his death; they therefore rely upon the statute of limitations for defence as well also upon the statute of presumptions."

On the trial the following issues were submitted to the jury, to which there was response as indicated at the end of each:

1. Was the trust deed described in the complaint, dated December 28th, 1866, executed by Bennett Flowers with intent to hinder, delay or defraud his creditors? Yes.

2. Was J. W. Williams a *bona fide* purchaser of the land in controversy for value, and without notice of any fraud on the part of said Flowers? No.

3. Was Virginia Flowers a *bona fide* purchaser of the land for value, and without notice of fraud? No.

4. Was the debt described in the complaint paid before the commencement of this action? Withdrawn from jury.

5. Was Edwin Fulghum, the administrator of Bennett Flowers, a party to the record in a suit in the Court of Eq-

uity of Wilson County, wherein Henderson H. Williams was appointed a trustee at the Spring Term, 1868, of said Court, in place of Alfred Thompson, who was made trustee in said deed? Yes.

6. Was there a fraudulent agreement between the parties to said suit in equity, in pursuance of which the decree in said suit was entered? Yes.

7. Has any demand or claim for the debt sued on been made by the holder or owner of said debt on the personal or real representatives of Bennett Flowers within seven years after the death of said Bennett Flowers? No."

The appellant requested the Court, among other special instructions asked for, to instruct the jury:

"That there is no evidence that there was any fraud or collusion on the part of Edwin Fulghum, administrator, in the equitable proceeding to substitute a trustee.

The Court gave the instructions asked, except that numbered 4, and as there was a dispute between counsel as to whether certain evidence was given, and defendants admitted if there was such evidence the issues should be submitted, the Court left it to the jury to decide what was the evidence. The Judge had said at first, that the testimony relied on by counsel was not recollected by the Court. The plaintiff's counsel had then insisted that there was evidence to show that Fulghum, Bennett Flowers, J. W. Williams and Virginia Flowers, belonged to the same family, and that was left to the jury to decide; plaintiffs' counsel insisted too, that all of the circumstances relied upon to show fraud as bearing upon the first three issues, also tended to show a family arrangement by virtue of which a decree was entered, especially that Fulghum should have been put on his guard by the terms of the trust deed.

The Court instructed the jury, as the Court was in doubt, that it was their province to say whether there was any evidence upon the disputed points as to the relationship of Fulghum,

&c., and then to say whether it was shown to their satisfaction, or so as to produce entire belief in their minds, that there was a fraudulent arrangement between the parties by virtue of which said decree was made to carry out a fraudulent purpose; if they should find affirmatively on the first issue, and so to the second and third issues, the jury was instructed also, that if they should find 'No' to the first issue, it would not be necessary to pass on the other issues.

Defendant's counsel excepted to the refusal of the Court to give instruction No. 4, as asked.

The defendant's counsel moved the Court to set aside the finding of the jury on the sixth issue and grant a new trial as to that issue, on the ground that there was no evidence, or no legally sufficient evidence, to go to the jury in support of such finding. The motion was refused and de'endant excepted. Defendant's counsel moved for judgment on the grounds:

1. That the finding of the jury on the last issue should be held by the Court to bar the action.

2. That the decree of the Court of Equity, the record of which is in evidence, operated as an estoppel. The motion was refused and defendant excepted."

The appellants—defendants—after verdict, also moved:

1. For a judgment in their favor, on the ground that the debt described in the complaint was barred by the seven years statute of limitations. (R. C., ch 65, § 11.)

2. For a judgment on the ground that said suit in Equity operated as an estoppel.

3. For the setting aside of the verdict as to the 6th issue, on the ground that there was no evidence to support the jury findings thereon.

These motions were refused, and judgment being rendered for plaintiffs, defendants appealed.

*Mr. Jacob Battle,* for the plaintiff.

*Mr. Hugh F. Murray,* for the defendants.

MERRIMON, J., (after stating the case) Such irregularity has been allowed to prevail in the course of this special proceeding as we think the Court below ought not to tolerate, much less encourage.

Although it was begun in vacation before the Clerk of the Court, as it should have been, still, at once, upon the filing of the petition and answer, raising issues of fact, it was transferred to the regular civil issue docket, and treated continuously thereafter as an action brought to the regular term of the Court. The plaintiff was allowed to file an amended complaint, and allege therein a cause of action distinct from the purpose of the special proceedings proper, that ought to have been the subject of an independent action; that is, he was allowed, in aid of the purpose of the special proceeding, to directly attack, as by a separate action, the decree in a suit began, heard and determined in the late Court of Equity, for fraud in procuring it—to try all the issues of law and fact arising in that respect, and to determine the whole matter upon the merits. So far as appears, there was no objection to this on the part of the defendants or the Court. The defendants filed their answer to the amended complaint, and the whole case thus constituted was tried as to all the questions raised in the special proceeding proper, and also as to the alleged fraudulent suit and the decree therein in the late Court of Equity. This is very objectionable, because it is irregular, inconvenient and confusing, and not in accordance with the course of procedure prescribed by law. Besides, it tends to impair the integrity and stability of regular methods of procedure essential to the due administration of public justice. It is a serious mistake to act upon the supposition that actions can be conducted in Courts of Justice without regard to established methods of procedure—that parties

and Courts may regard and disregard them, hoping thereby to save time and labor. It seldom happens that a departure from them fails to produce confusion and dissatisfaction, and not infrequently some parties suffer injustice by it.

Notwithstanding the irregularities in this case adverted to, we are of opinion that the action of the Court must be upheld, because the Court had jurisdiction of the parties and the subject matter of the litigation, and no objection was raised by the defendant to the disorderly course of procedure, and it had at least the implied sanction of the parties and the Court. Very certainly it could not be upheld if objection had been made in apt time. *Southall* v. *Shields,* 81 N. C., 28 ; *Merrill* v. *Merrill,* 92 N. C., 665; *Costin* v. *Bryan,* 93 N. C., 302; *Ely* v. *Early,* 94 N. C.. 1 ; *Clendening* v. *Turuer,* 96 N. C., 416 ; *Railroad* v. *Smith,* 98 N C., 509 ; *Peebles* v. *Norwood,* 94 N. C., 167 ; *Loftin* v. *Rouse,* Id., 508.

The defence relied upon by the defendants appellants that the bond of the intestate on which the judgment in favor of Kizziah Eatman was founded was, as to the administrator, barred by the statute of limitations, was settled adversely to the appellants by this Court in a former appeal in this case. *Glover* v. *Flowers,* 95 N. C., 57. It was not barred as to the administrator for the reasons stated in the opinion of the Court in that appeal. Nor was there any statutory bar of it in favor of the heirs at law of the intestate. In the absence of personal assets the land of the intestate and ancestor remained liable to be sold to make assets to pay his debts until they were all discharged. The estate of this intestate is governed and to be settled and his debts paid as required by law and statutory regulation as the same prevailed next before the first day of July, 1869. (*The Code* § 1433.) *Glover* v. *Flowers, supra.* There was no statutory bar prior to that time as there is now in favor of the heir. If before the time mentioned the heir or devisee sold the land of the intestate or testator, within two years next after

the probate of the will and the qualification of the executor or the granting of letters of administration on his estate, as the case might be, such sale would be void as to creditors, the executor or administrator of the deceased debtor. (Rev. Stats. Ch. 46, § 61.) If the heir or devisee should sell the land after two years the creditor or executor or administrator would be entitled to have the price realized by him for the land to pay debts of such debtor. *Hinton* v. *Whitehurst*, 68 N. C., 316; *Same* v. *Same*, 71 N. C., 68; *Moore* v. *Shields*, 70 N. C., 327; *Badger* v. *Daniel*, 79 N. C., 372. The Court therefore properly decreed that the statute could not avail the appellants.

The Court adjudged that the deed of trust, the decree in the suit in the Court of Equity mentioned, substituting a trustee, his sale of, and deed conveying the land to John W. Williams, and the deed of the latter conveying the same to the defendant, Virginia Flowers, were void for fraud. The appellants requested the Court to instruct the jury that there was no evidence of the alleged fraud. We cannot hesitate to decide that the Court properly declined to give such instructions.

There clearly was such evidence, part of it tending strongly to prove fraud, while another part of it, taken by itself, had less point and force, but the whole, taken together, unquestionably made evidence to be submitted to the jury. There was evidence going to show the insolvency of the intestate at the time he executed the deed of trust; that the debt intended to be secured by it was unfounded; that part of the property embraced by the deed was perishable, such as cows, fodder, pork and the like; that the intestate remained in possession of and used the property until his death; that he manifested much anxiety as to the bond held by Peel, guardian; the close relationship and connection of the principal parties connected with the alleged fraud; the exceptional character of the statements of fact and charges

in the bill in equity—the exceptional provisions in the decree directing the conveyance of the property, both real and personal, to the substituted trustee,; that the administrator of the intestate made no defence to the suit in equity—there was such and like evidence—there were facts and circumstances in evidence that, of themselves, proved very little, but which, all taken together in their just bearing upon each other, made evidence to go to the jury, the weight of which was to be determined by them.

We think, also, that there was evidence of collusive fraud on the part of Fulghum, administrator.   The evidence went to show that he knew the parties charged with the fraud— their close relationship—the condition of the estate of his intestate; that he knew of the imputed fraud as to the deed of trust; that he made no effort to subject the land to the payment of the debt of his intestate; that he made no defence whatever to the bill filed against him in the Court of Equity, the decree in which required him to convey the title to the personal property to the substituted trustee.   These facts and others, taken in connection with the other evidence, constitute some evidence of collusion on the part of the administrator, to be submitted to the jury.

It was contended, on the argument, that the Court erroneously left it to the jury to determine *what was evidence* of the relationship of Fulghum, administrator, to the other parties to the alleged fraud.   There is no assignment of error presenting this point; but if there were, we think the Court did not leave it to the jury to be determined.   There was a dispute between counsel as to whether certain evidence was given in that respect, and the Court told the jury it did not remember whether there was or not, and that " it was their province" to determine whether there was such evidence before them, and if so, whether or not it satisfied them of the alleged fraudulent combination.   The Court did not remember whether the particular evidence in dispute was before

them, and told them that they could and might determine whether there was or not. This seems to be substantially what the Court said and intended, and no more. It did not intend to leave it to the jury to decide what was or was not evidence, or its competency. It does not so fairly appear.

The depositions of witnesses were read in evidence on the trial. Certain exceptions to the competency of parts of the evidence were noted in them at the time they were taken, and these, or some of them, were insisted upon on the trial. These exceptions should have been disposed of before the trial, in the way pointed out in *Carroll* v. *Hodges*, 98 N. C., 418. But treating them as having been properly considered by the Court, the evidence objected to by the appellants was of slight importance, and it does not appear that any stress was laid upon it in the course of the trial, or that it probably influenced the action of the jury. That such evidence was not excluded, though perhaps not strictly competent, is not ground for a new trial. To entitle the complaining party to a new trial, because of the admission of incompetent evidence of slight importance, it should appear that he suffered, or might have suffered prejudice, by its admission. *May* v. *Gentry*, 4 D. & B., 117; *Wagoner* v. *Ball*, 95 N. C., 323.

We are, therefore, of opinion that the judgment should be affirmed.

Affirmed.