The defendants say that at the time this action was instituted and judgment obtained against them they were aged, respectively, 7 and 9 years, and that no defense was made for them, as they are informed and believe; that they were without general guardian; that they were never served with process and never had a day in court to make their defense; that the court failed to appoint a guardian ad litem for them, as required by law, and no defense was made for them; that no issues were submitted to a jury, as required by law; that a jury trial was not waived; that the judgment was "irregular and void," and that they have a good and meritorious defense to the action.
The plaintiff denies all this, and says that the judgment was regularly and properly; rendered upon the findings of fact by the court, and if there were any irregularities in the proceedings they were cured (94) by the judgment and by the act of 1879, etc. She further says that the defendants were represented by able counsel, who filed an answer to the complaint for them, and that a fair and impartial trial resulted in the judgment now sought to be set aside, and that by reason of the delay of the defendants to make this motion, by lapse of time, death of witnesses and failure of memory, it will be a hardship upon her if this motion shall be granted.
It appears from the record sent up as a part of the case on appeal that the original summons was issued on 19 April, 1871; that it was, *Page 101 
"on the return day thereof," returned by the sheriff, executed as follows: "Received 26 March, 1871. Served by leaving a copy of the summons with the grandfather of the defendants, Reuben Nixon, with whom they lived. Copy of summons left at his house." Signed by the sheriff.
It further appears from the record that a complaint was duly filed at the Spring Term, 1871, alleging, in detail and at length, the sale of the land described therein by Mordecai Morris (the ancestor of the defendants) to the plaintiff, the consideration thereof, the execution of the deed by Mordecai Morris, and its loss; that Mordecai Morris is dead, and the infant defendants were his only heirs at law, and closing with the prayer: "That a guardian ad litem be appointed for the said minor defendants to answer the complaint and defend their interest in this action, and that the plaintiff may have a decree that said deed was executed and lost, and that the title to said land is in the plaintiff from the execution of said deed, and that the defendants may be decreed to execute a new deed to plaintiff, conveying the said land to her, and for such other relief," etc.
To this complaint an answer was filed at the same term (Spring Term, 1871) by Martin Reid, attorneys for defendants, denying in detail all the material allegations of the complaint. They further say that if any deed was ever executed it was only intended as a mortgage or trust, was so received by the plaintiff, and all that (95) was due has been long since paid.
At Fall Term, 1871, the following appears from the record:
MARY A. WHITE v. LUZINKA MORRIS and ELOISE MORRIS, by WILLIAM L. REID, Guardian ad litem.
Upon application to the court, William L. Reid, Esq., is appointed guardian ad litem and prochein amie to the infant defendants, and his answer to this complaint allowed and adopted as the answer of said infant defendants.
And thereupon, upon the pleadings and testimony in said action, it is ordered, adjudged and decreed by the court that there was a contract of sale and for the conveyance of the land named in the pleadings from Mordecai Morris to the plaintiff before that day, and that said conveyance was actually executed as early as 28 January, A.D. 1868, conveying the said lands named in the pleadings in fee to the said plaintiff, for the consideration, amongst others, of the sum of $2,800, and that said deed is lost. It is ordered, adjudged and decreed that the lands named in the pleadings be and they are hereby declared to be vested in *Page 102 
fee in the plaintiff, Mary A. White, and that the defendant do make a conveyance of said lands, when they come of age, to the plaintiff or to her heirs or assigns.
It is ordered and adjudged that this judgment be enrolled and registered in Pasquotank County, and that the costs be paid by the plaintiff.
C. C. POOL, J. S.C.
 This decree was enrolled and also registered in the office of register of deeds for the county.
(96) From the evidence furnished by the record in the cause, and affidavits (not necessary to be set out in determining the questions before this Court), the court finds the following facts:
"That no summons or notice was served on either of these defendants or upon any guardian ad litem; that both of the defendants, at the time of said judgment, were infants, under 14 years of age, and had no general or testamentary guardian.
"That the date, `27 March, 1871,' endorsed on back, of summons by B. F. Wiley, sheriff of Gates County, was Sunday; that summons was issued 19 April, 1871; that W. L. Reid and W. F. Martin, attorney at law, filed an answer for and in the name of the defendants; that W. L. Reid was appointed guardian ad litem for defendants, and filed an answer as such; that this was an action to set up a lost deed, alleged to have been executed to plaintiff for valuable consideration by one Mordecai Morris for land formerly owned by Mordecai Morris, who was dead at the institution of this action, having left no will; that the defendants were the only heirs at law of said Mordecai Morris; that the defendants were 25 and 27 years old when they made this motion; that this motion was made at Spring Term, 1888; that defendants instituted suit in February, 1886, to set aside this judgment, but said suit was dismissed at June Term, 1887.
"Defendants excepted to the finding of the court, the fact that W. L.Reid filed an answer as guardian ad litem for the defendants, upon the ground that there is no evidence for finding that fact. There was no evidence before the court of said W. L. Reid's appointment as guardianad litem for defendants, except the final judgment rendered in the court, and no evidence in regard to said Reid filing any answer as said guardian ad litem, except what appears in said final judgment, marked `A,' and defendants' affidavit, marked `B,' and made a part of (97) this case. There was no answer of W. L. Reid as guardian ad litem of defendants found on file with the papers in this cause, and no evidence that it had been lost. All of the pleadings in the original case are hereto attached and made part of this case."
Upon the facts found, the court rendered judgment dismissing defendants' motion. Defendants appealed. *Page 103 
Was the judgment in question irregular and void?
There is a presumption in favor of the validity of every judgment of a court of competent jurisdiction, and in this there is no distinction between judgments against adults and judgments against infants, where the parties are properly within the jurisdiction of the court (Mauney v.Gidney, 88 N.C. 200), and while it is, for obvious reasons, the duty of the courts to see that the rights and interests of infants are guarded and protected, and, where they are without regular guardians, to see that suitable and fit persons are appointed guardians ad litem to protect and defend them in their rights when litigated before the courts, yet, in the absence of any charge that the court has been imposed upon by fraud and collusion, it will be presumed that every court, having jurisdiction of the parties and the subject-matter, does what is necessary to give effect to its proceedings, this presumption in favor of the validity of judicial proceedings will not permit the judgments of courts to be set aside or annulled, in the absence of fraud, for mere informalities, technicalities or omissions that do not affect their merits or defeat the ends of justice. Omnia presumuntur rite esse acta. It would tend to lessen public confidence in the efficacy of judicial proceedings if (98) the judgments of courts, after the lapse of years, are to be disturbed for the want of formal and technical precision in the record of their proceedings and judgments. It is for this manifest reason of public policy, as well as in the interest of substantial justice, which is not always subserved by reopening and prolonging litigation, that the courts have gone very far in upholding the validity of loose and informal proceedings and judgments, as in the case of Howerton v. Sexton,90 N.C. 581, and similar cases. Besides, it is enacted (The Code, sec. 276) "that no judgment shall be reversed or affected by reason of any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."
In this case the defendants insist that the judgment was irregular and void upon several grounds. The first is that there was no personal service on the infants.
Formerly, an infant was brought into court just as any other defendant was. If he had a general guardian, process was served upon the guardian; if there was no general guardian, the court acquired jurisdiction by service of process upon the infant, and appointed some suitable person — frequently some officer of the court — as guardian ad litem, who accepted service and defended for him; but since the Code of Civil Procedure *Page 104 
(The Code, sec. 217), the service upon a minor under the age of 14 must be upon him personally, and also his father, mother or guardian, or, if there be none in the State, then upon any person having the care and control of such minor, or with whom he shall reside, or in whose service he shall be employed. In the present case, process was not served upon the defendantspersonally, as was required, but upon their grandfather, with whom they lived.
(99) The failure of personal service is cured by the act of 1879 (The Code, sec. 387), which makes valid the "proceedings, actions, decrees and judgments" in civil actions and special proceedings of the courts, notwithstanding there has been no personal service of summons in actions pending against infants, and prior to 14 March, 1879, unless impeached and set aside for fraud. But the defendants say that the curative act of 1879 does not apply to cases in which there has been no service of process upon any one, and that in this case there never was any valid service of process upon anybody, because it was served, as appears by endorsement on the summons, on 26 March, 1871, and that is found as a fact to have been Sunday, and was therefore void. The record shows that the summons was issued on 19 April, 1871, and executed on 26 March, 1871. This was impossible, in the order of time, and it is manifest that there was some mistake in regard to the dates. But, assuming that it was on Sunday, it is said in S. v. Ricketts, 74 N.C. 192, that "In this State every act may lawfully be done on Sunday which may lawfully be done on any other day, unless there be some act of the Legislature forbidding it to be done on that day. "Under the law prior to The Code, it was made illegal to execute any civil process on Sunday, and all such process might be "abated by the plea" (Revised Code, ch. 31, sec. 54), and now, under The Code, sec. 291, no person can be arrested in a civil action on Sunday. But we need not pursue this branch of the question, as there was an appearance, and, as is well settled, this cured any preceding irregularity and constituted a cause in court, and placed the defendants in the same situation in relation to it as if process had been properly and regularly served upon them. Turner v.Douglass, 72 N.C. 127. It gave the court jurisdiction.
In Marshall v. Fisher, 46 N.C. 111, it is said that a judgment against an infant appearing by attorney, though erroneous,"is of full force and effect until reversed," and the objection, says Pearson,(100) J., could only be taken advantage of by a writ of error. As writs of error are now abolished in civil actions, and appeals substituted therefor (see The Code, sec. 544, et seq.), it can now be only by appeal. See, also, Turner v. Douglass, supra. *Page 105 
The defendants rely upon Stancill v. Gay, 92 N.C. 464; Larkins v.Bullard, 88 N.C. 35, and Perry v. Adams, 98 N.C. 167. There is a very clear distinction between those cases and this. In them There was noservice of process at all, on anybody, no guardian ad litem appointed to protect their rights, and no answer by any one for them, and the curative act of 1879, neither by its letter nor spirit, was intended to make the proceedings and judgments valid in such cases. In Perry v. Adams the present Chief Justice said: "The object of the curative statute is to cure the judgment and proceeding, when such Personal service was omitted, but it does not embrace cases where no service was made upon the infant, or any other person in his behalf, as the statute requires to be done." In the case before us there was service upon the grandfather of the infants, with whom they lived, and an appearance and answer for them.
The defendants say, secondly, that there was no evidence before the court to support the finding of fact that "W. L. Reid filed an answer as guardian ad litem for the defendants, or of his appointment as guardian adlitem." the recitals and facts appearing in the record constitute evidence, in themselves, to support the finding, and this objection cannot be sustained.
The law is careful in protecting the rights of infants, and when they are brought within the jurisdiction of the courts, by proper or sufficient process, a guardian ad litem should be appointed for them, who shall, "if the cause in which he is appointed be a civil action, file his answer to the complaint within the time required for other defendants," and the requirements of The Code, sec. 181, and, as the present (101)Chief Justice said, in Ward v. Lowndes, 96 N.C. 378: "This statute should be strictly observed, but mere irregularities in observing its provisions, not affecting the substance of its purpose, do not necessarily vitiate the action or special proceedings, or proceedings, in them."
In Williamson v. Hartman, 92 N.C. 239, it is said: "Generally, a judgment will be set aside only when the irregularity has not been waived or cured, and has been or may be, such as has worked, or may yet work, serious injury or prejudice to the party complaining interested in it. While, as has been said, the courts will always be careful of the rights of infants, they will not set aside irregular judgments against them as a matter of course, and before doing so, it ought to appear from the record, or otherwise, that the infant has suffered some substantial wrong or injury. Of course, it may be impeached for fraud, and will also be set aside if void."
It is insisted, thirdly, that no issues were submitted to the jury, and that there was no waiver of trial by jury, as required by The Code, and the judge had no right to find the facts in the manner set out, and that *Page 106 
the judgment rendered was void for this fatal irregularity. The defendants were properly in court by their guardian ad litem and by attorney, and it was competent for them to waive a jury trial, which should have been properly and regularly done in the mode prescribed by statute; but if the judge proceeded to find the facts, and there was no objection, neither before nor after the rendition of the judgment, during the term, and without appeal, it must be taken to have been rendered by consent and a waiver, and they will be estopped. Leach v. R. R., 65 N.C. 486; Crump v.Thomas, 85 N.C. 272; Stevenson v. Felton, 99 N.C. 58; Spencer v.Credle, 102 N.C. 68; R. R. v. Parker, 105 N.C. 246.
When the court has jurisdiction of the parties and of the (102) subject-matter, and renders judgment regularly in term, it will be assumed, after judgment, that any preceding informality has been waived by consent; and if the judgment is taken without objection, though it be erroneous, if there is no appeal, it will be too late to say that there was no waiver.
The court having jurisdiction of the parties, if there was no consent, the proper remedy was by appeal, as in the cases of Andrews v. Pritchett,66 N.C. 387, and Chasteen v. Martin, 81 N.C. 51.
It appears from the recital in the judgment that the guardian ad litem
adopted the answer that had been filed for the defendants. This answer, sent up as part of the case, is not a mere formal answer, but a denial, in detail, of the allegations of the complaint, and sets forth affirmatively matters of defense, manifesting an intelligent interest in behalf of the infant defendants. It does not appear how the defendants suffered any wrong or injury, or that any injustice was done them; and in the absence of fraud, of which there is no allegation or intimation, the judgment must be presumed to have been fairly and regularly taken. Wiseman v. Penland,79 N.C. 197.
Affirmed.
Cited: S. v. Penley, post, 810; Taylor v. Ervin, 119 N.C. 276; Henryv. Hilliard, 120 N.C. 485; Rodman v. Robinson, 134 N.C. 507; Lumber Co.v. Lumber Co., 137 N.C. 438; Carraway v. Lassiter, 139 N.C. 155;Rackley v. Roberts, 147 N.C. 207; Yarborough v. Moore, 151 N.C. 122;Hughes v. Pritchard, 153 N.C. 141. *Page 107 
(103)