Commonwealth of Pennsylvania ex rel. Rogers *v.* Daven et al., Appellant.

Argued April 25, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Thomas Boylan,* and with him *Samuel W. Salus,* for appellant.—The record from the juvenile court of North Carolina was not admissible in evidence: Graham v. Grigg, 3 Harr. (Del.) 408; McElfatrick v.

Taft, 10 Bush (Ky.) 160; Kean v. Rice, 12 S. & R. 203; Snyder v. Wise, 10 Pa. 157.

The court was without jurisdiction to enter judgment: Stanton v. U. S., 37 Fed. 252; Dick v. International Congress, 138 Mich. 372; Lewisburg Bridge Co. v. Union Co., 232 Pa. 255.

*Franklin E. Barr,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, and *George Pennell,* for appellee.—The North Carolina decree was valid: Thomas v. Sanderlin, 173 N. C. 329; Smith v. Wilkins, 164 N. C. 136; Van Walters v. Board and Guardian, 132 Ind. 567; In re John Coston and Ellen Coston, Minors, 187 N. C. 509.

The judgment of a juvenile court of North Carolina is entitled to full faith and credit in the courts of Pennsylvania: Christmas v. Russel, 5 Wall. 290; 18 L. E. 475; Kennedy v. Loyal Order Moose, 252 U. S. 411; 64 L. E. 638; Chicago etc. Ry. Co. v. Sturm, 174 U. S. 710; Reynolds v. Stockton, 140 U. S. 254; 35 L. E. 464; Ritchie v. McMullen, 159 U. S. 235; 40 L. E. 133; Reeves v. Davis, 80 N. C. 209; Ellis v. Ellis, 190 N. C. 418.

OPINION BY BALDRIGE, J., July 2, 1929:

G. Wallace Bryant, a resident of Buncombe County, North Carolina, presented his petition to the judge of the juvenile court of that county representing that his two minor children under the age of sixteen were being neglected, and prayed the court to make such inquiry and make such an order as the court might deem proper and for the best interests of the children. The summons was served, as provided by the law of North Carolina, upon Margaret M. Bryant, the mother and the appellant herein, and after several continuances, a hearing was had on July 14, 1927. The court found that it would be for the best interests of the minor

children, Marjorie and Frances Bryant, that they be taken in charge by the juvenile court and placed in a family boarding home, and that they be permitted to visit, at stated intervals, the father and the mother who had separated. The children remained in the custody of the juvenile court until November 30, 1927, when Mrs. Bryant, violating the decree of the juvenile court, unlawfully carried away the children from the State of North Carolina to Philadelphia, Pennsylvania.

A petition was presented to the municipal court of Philadelphia County by Margaret A. Rogers, girls' referee of the juvenile court of Buncombe County, praying that the children be given into her custody for the purpose of returning them to North Carolina. A writ of habeas corpus was awarded on January 11, 1928, answers were filed, and after a full hearing, Judge GLASS, on the 27th of July, 1928, remanded the children to the custody of the juvenile court of Buncombe County. Appeal was taken from this order by Margaret M. Bryant.

The errors complained of raise for our consideration the following questions: 1. Was the decree of the North Carolina court valid? 2. Was the judgment of a juvenile court of North Carolina entitled to full faith and credit in the courts of Pennsylvania? 3. Should the exemplified copy of the record have been admitted in evidence? 4. Was the petitioner a proper party to institute these proceedings?

The Act of 1919 creating the juvenile courts in North Carolina provides that the Superior Courts shall have exclusive original jurisdiction of any case of a child less than sixteen years of age who is neglected or is under improper or insufficient guardianship. The act further provides in section 5040 that there should be established in each county in the state a juvenile court as a separate part of the Superior Court of the district. The clerks of the Superior Court of each county

in the state shall act as judge of the juvenile court. The court shall maintain a full and complete record of all the cases brought before it, to be known as the juvenile record.

Section 5044 provides for the filing of a petition and therefrom the court may forthwith, after an investigation by a probation officer, cause to be issued a summons signed by the judge or the clerk of the court requiring the child and the parents to appear and show cause why the child should not be dealt with according to law. Upon return of the summons the court shall proceed to hear the case in a summary manner. The law contemplates that the court may make independent investigation into the habits, surroundings, conditions and tendencies of the child, so as to properly enable it to enter such order or judgment as might best conserve the welfare of the child. If the court is satisfied that the child is in need of care, protection, or discipline, or has been neglected, or in need of more suitable guardianship, it may make an order committing the child, as was done in this case. An appeal may be taken by a dissatisfied party from any judgment or order of the juvenile court but such appeal shall be filed with the juvenile court within five days after the issuance of the judgment or order of the court.

The statute creating this court and providing for its efficient administration has been upheld. Statutes of this kind have been looked upon with general approval: State v. Burnett, 179 N. C. 735; In re: John Coston and Ellen Coston, Minors, 187 N. C. 509; Commonwealth v. Fisher, 213 Pa. 48.

The court had jurisdiction of the subject matter and of the parties. They were regularly summoned and were in court in person and were represented by counsel. The record shows that a hearing was had. It was held in the court's chambers, and, although it appar-

ently was of an informal manner, it was conducted according to their practice and it was entirely regular. Much of the juvenile work is conducted in this State in the same unceremonial way. Every opportunity seemed to have been afforded to the appellant to be heard that she then desired. The judge even changed certain terms and conditions of his decree to meet objections thereto that she raised. We find no reason for holding the decree invalid.

It is contended upon the part of the appellant that the juvenile court is of inferior, special and limited jurisdiction; that it is not a court of record and that full faith and credit should not have been given to its record.

Article 4, section 1, of the Constitution of the United States provides: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

In pursuance of this section, Congress passed the Act of May 26, 1790, which provided "that the records and judicial proceedings of the courts of any state shall be proved and admitted in any court within the United States by the attestation of the clerk, together with a certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the attestation is in due form."

In the case of Dixon v. Dixon, 74 Atlantic Reporter 995, a controversy over the custody of children arose between a father, who was then living in New York, and his wife in New Jersey. The custody was awarded to the mother but the father was given the right to visit them. The mother went to Maine and thereupon the original order was modified. The court said:

"There can be no doubt that the order of July 24, 1907, is within the protection of that clause of the Federal Constitution which declares that 'full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.' Discussion is unnecessary, for the decisions are all one way. The rule is that in any controversy between the parents relating to the custody of their children the award made by a competent tribunal is res adjudicata and cannot thereafter be questioned on the same state of facts: Mercein v. People ex rel. Barry, 25 Wend. (N. Y.) 64, 35 Am. Dec. 653; Matter of Lederer, 38 Misc. Rep. 668, 78 N. Y. Supp. 236; Bleakley v. Barclay, 75 Kan. 462, 89 Pac. 906, 10 L. R. A. (N. S'.) 230; Brooks v. Logan, 112 Ind. 183, 13 N. E. 669, 2 Am. St. Rep. 177; Slack v. Perrine, 9 App. Cas. D. C. 128; State v. Baird, 19 N. J. Eq. 481-486; Stetson v. Stetson, 80 Me. 483, 15 Atl. 60.''

If the judgment of the juvenile court had been offered in evidence in another tribunal in North Carolina, it undoubtedly would have been admitted. It was conclusive evidence there and it is entitled to the same credit and consideration here as in the courts of the state from which the record came: Benton v. Burgot, 10 S. & R. 240; Baxley v. Linah, 16 Pa. 241; Rogers v. Burns, 27 Pa. 525; Reber v. Wright, 68 Pa. 471.

The well settled law is that in the absence of fraud or collusion a judgment or decree of a court of competent jurisdiction, regular on its face, cannot be impeached in a collateral proceeding in the same or another court. It is conclusive as to every fact directly adjudicated, or which was necessarily involved in or was material to the adjudication (Metzger's Estate, 242 Pa. 69), and must be given full faith and credit in other jurisdictions as to all matters in controversy: Commonwealth ex rel v. Kelly, 287 Pa. 139; Nash v.

Williams, 87 U. S. 226; White v. Morris, 107 N. C. 93; Glover v. Flowers, 101 N. C. 134.

We do not concede that the juvenile court is an inferior or a special court as that term is generally used. It is a higher rank than that of a justice of the peace or a magistrate. It is a division or a part of the Superior Court. But if we assume that it is an inferior tribunal, the record is still entitled to full credit. It is true that it has no seal but the Act of Congress does not make a seal indispensable to have its record given full faith and credit. It provides only that it must be affixed if there be a seal.

A court may be an inferior or limited tribunal, yet if it has general jurisdiction of any one subject, "its proceedings and judgments in respect to that subject will be sustained by the same liberal presumptions as to the jurisdiction which obtain in the case of the Superior Courts": Edwards v. White, 180 N. C. 56.

In the case of State of Ohio v. Hinchman, 27 Pa. 479, a dispute arose as to whether or not the record of a probate court was entitled to full faith and credit under the Constitution of the United States and the Act of Congress. The court said: "It matters not that the probate court ranks as an inferior tribunal, and not as one of those superior courts, who exercise a common law jurisdiction, and whose acts and judgments are conclusive in themselves; for the strictness with which the proceedings of inferior tribunals are scrutinized, only applies to the question of jurisdiction, and when the existence of that is proved or conceded, the maxim omnia rite acta applies to them as well as to courts of general jurisdiction: 1 Smith's Leading Cases (H. & W.) p. 817. ......

But even if this (the record) were not a sufficient compliance with the Act of Congress we would still treat it as adequate authentication, upon general prin-

ciples and independently of the Act of Congress. That act prescribes a general rule which makes records admissible in every state, but it does not exclude any other evidence which the courts of a particular state may deem competent: Baker v. Field, 2 Yeates 532; Kean v. Rice, 12 S. & R. 203.''

If the appellant felt an injustice had been done, she had her remedy and could have taken an appeal within five days after the rendition of the judgment. It is not now a question whether the judgment of the North Carolina court was right or wrong. If it was wrong, the appellant should have taken an appeal, but it cannot now be impeached in this collateral proceeding.

It must be conceded as contended by appellant that a judgment before a justice of the peace obtained in another state is not within the Act of Congress directing the mode of authentication of the records and judicial proceedings of the courts of several states: Snyder v. Wise, 10 Pa. 157. The reasoning in that case, however, does not apply to that of a juvenile court where the statute expressly provides for an appointment of a clerk and maintaining a full and complete record, especially where the juvenile court is a part of the Superior Court which is recognized as a court of record and a court of general jurisdiction. A record of the justice of the peace can not be authenticated as provided by the Constitution or the Act of Congress, as a justice of the peace has no official clerk and therefore it is impossible for him to certify the proceedings according to the Act of Congress.

We are of the opinion that the record was correctly admitted.

We think there is no merit in the objection to the admission of the exemplification of the record. The record offered in evidence shows that it had been

certified to and authenticated by J. B. Cain, clerk of the Superior Court and the clerk of the juvenile court of Buncombe County. It was also certified by Hon. Carl B. Hyatt, judge of the juvenile court. Hon. Walter E. Moore, judge of the Superior Court, certified that J. B. Cain was the clerk of the Superior Court and of the juvenile court. It was also further certified by J. B. Cain, clerk of the Superior Court and clerk of the juvenile court, that Hon. Walter E. Moore was the judge of the Superior Court and it was also certified by Hon. Walter E. Moore that Hon. Carl B. Hyatt was the duly constituted judge of the juvenile court, and J. B. Cain likewise certified that Hon. Carl B. Hyatt was the judge of the juvenile court. These certificates are in form and meet the requirements of the statute of the United States providing for authentication of judgments from one state to another, which provides: "The records and judicial proceedings of the courts of any state or territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken": Rev. Stat. 905, et seq. U. S. C. A., Title 28, Secs. 687, et seq.

That brings for our consideration the last question, namely, whether the petitioner is a proper party to institute these proceedings. The appellant contends that under the commitment of Judge Hyatt, the two minors were placed in the custody of Mrs. Addie Floyd, boarding house keeper, and that she is the only person en-

titled to custody of the minors; that, therefore, Margaret A. Rogers, the girls' referee, was not a proper petitioner as she was not entitled to the custody of the minors. Under the statute the minors were in the legal custody and control of the juvenile court and subject to its order, and therefore the court had, through its proper agent, the petitioner, a right to institute a proceeding to obtain possession of the children from any illegal detention. The petitioner had a legal interest in the proceeding and had the right to secure the possession of the minors.

A careful examination of the able arguments of counsel in this case brings us to the conclusion that the learned trial judge's findings are correct. If the appellant feels that an injustice has been done, she can make her appeal to the court whose judgment she sought to defeat by clandestinely carrying away the children while under the control of the State of North Carolina by a formal order of its court. It would be disturbing to the comity existing between states if the courts of one state did not aid, if possible, to defeat an act that had the fraudulent purpose of frustrating a court's decree of a sister state.

The judgment of the lower court is affirmed.

---

DISSENTING OPINION BY KELLER, J.:

The municipal court held no hearing on the merits in this case; it gave no consideration to the question, whether the permanent welfare and best interest of these young children, four and six years old respectively, would be better promoted by sending them back to the boarding-house keeper in Asheville N. C., a total stranger, in whose custody they had been placed by the juvenile court of Buncombe County, N. C., or by letting them remain with their aunt, Mrs. Daven, in Philadelphia, with whom they and their mother

have been living since they came north in November, 1927. The entire hearing in the court below was devoted to an inquiry as to whether the decree entered by the juvenile court of Buncombe County was a valid and legal one, the judge of the municipal court apparently taking it for granted that if a legal decree was so entered in North Carolina, it must be enforced in this State under the clause of the Federal Constitution (Art. IV, Sec. 1) providing that "Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State."

It has been decided, however, in a number of states, among them North Carolina, that the paramount issue in a habeas corpus proceeding for the custody of children is the best interests and welfare of the children and as these may be affected by a change of conditions and circumstances, and as the relationship of parent and child is a status, not a property right, that the decree of a court of a sister state does not have the same binding force and effect in a proceeding for the custody of children that it does with respect to a money judgment or a decree affecting property.

Perhaps the leading, or most frequently cited, case on the subject is In re Petition of Frank B. Bort, 25 Kansas 308, (1881), where the father of two children, four and five years old, respectively, applied for a writ of habeas corpus against their mother for their possession. The petitioner relied on a decree of a circuit court of Wisconsin entered in a divorce action January 26, 1881, awarding him the custody of the children. When the action was begun both parties resided within the jurisdiction of that court. Shortly afterwards Mrs. Bort took her children and came to Leavenworth to live with her parents. The Supreme Court of Kansas, speaking through Mr. Justice BREWER, afterwards of the Supreme Court of the United States, repudiated the doctrine that the full

faith and credit clause of the Federal Constitution applied in a proceeding for the custody of children, as if the parents had "some property rights in the possession of their children," and said: "Where the custody of the children is the question, the best interest of the children is the paramount fact. Rights of father and mother sink into insignificance before that. Even when father and mother are living together, a court has the power, if the best interests of the child require it, to take it away from both parents, and commit the custody to a third person. In other words, a court of chancery stands as a guardian of all children, and may interfere at any time, and in any way, to protect and advance their welfare and interests." After stating that the conduct of the mother since the divorce seemed to have been without reproach, the court proceeded: "Whatever may be her faults, it is evident that the children will receive only the kindest care if left in their present home. They are of that tender age when they need a mother's care. No stranger, however kind, can fill her place. We may not ignore these universal laws of our nature, and they compel us to place these children where they will be within reach of a mother's love and care." The court awarded the children to their grandmother, Mrs. Powers, mother of Mrs. Bort.

This case has been cited in numerous proceedings of a similar character, and was followed by the Supreme Court of Kansas in Avery v. Avery, 33 Kans. 1, 5 Pac. 419, 422, where it was said: "The decree committing the care and custody of this minor child to her mother only determined the right of the parties inter sese, and therefore was not erroneous or without jurisdiction. The decree in no manner concludes other courts as to the best interests of the child: In re Bort, 25 Kansas 308."

In Hanrahan v. Sears, 72 N. H. 71, 54 Atl. 702 (1903) the Supreme Court of New Hampshire disregarded the decree of a Vermont court saying: "Upon all the evidence, the Superior Court should determine the question whether the child's welfare will be best promoted by taking her from her relatives with whom she has lived for many years and for whom she may have feelings of filial regard and placing her in the custody of the relator, an officer appointed under the law of Vermont."

In Woodworth v. Spring, 4 Allen (Mass.) 321, (1862), Bigelow, C. J., speaking for the Supreme Judicial Court said: "The decree of the probate court [of Illinois appointng petitioner in present habeas proceedings guardian of the child] does not deprive this court of the power to adjudicate and determine the question of the proper custody of the child as between a domestic guardian and one appointed in the place of the domicile of the infant . . . . . . It is for the court to determine, in the exercise of a sound judicial discretion, having regard to the welfare and permanent good of the child as a predominant consideration, to whose custody he shall be committed."

In Aufder Heide v. Kiskaddon, 79 Okla. 6, 190 Pac. 859 (1920), the Supreme Court of Oklahoma following the Bort case held that a decree of the circuit court of Gasconade County, Missouri, awarding two minor children to the custody of their father was not conclusive on the courts of Oklahoma "at this time by reason of the change of situation and circumstances affecting the children's welfare and proper custody, occurring since the decree was rendered;" and that whenever the possession and custody of minor children is sought by habeas corpus proceedings the court will make such order for their care and custody as the best interests of the children may require.

In Allen v. Allen 105 N. Y. 628, 11 N. E. 143, (1887), the court of appeals approved the decision of the Supreme Court in the same case (40 Hun 611), awarding a child to its mother in consonance with a decree of a county court in Illinois, but said: "The court below, upon a view of all the existing facts relating to the welfare and interest of the infants, exercised their discretion in awarding to the mother the custody of the children; and in so doing gave to the Illinois decree not the force of an estoppel, or the conclusive effect sometimes due to a judgment, but simply regarded it as a fact or circumstance bearing upon the discretion to be exercised, without dictating or controlling it."

In Calkins v. Calkins, 217 Ala. 378, 115 So. 866 (1928), the Supreme Court of Alabama followed the Bort case, and disregarding the decree of a court in Tennessee, awarded the custody of the child to its mother.

In Wilson v. Elliott, 73 S. W. 946, (Texas, 1903), the Supreme Court approved the language of Bishop on Marriage and Divorce, that "The true rule in the state of its rendition is that it is res judicata, concluding the question. But it does not conclude the question for all time since new facts may create new issues. Nor since the relation of parent and child is a status, rightfully, like marriage, regulated by any state in which the parties are domiciled, does the order in one state operate as an estoppel of all future inquiry in the courts of another where the child has acquired a domicile."

In Cox v. Cox, 214 S. W. 627 (Texas, 1919), where the appellant relied on the judgment and final decree of the chancery court of Mississippi awarding him, as against his wife, the care, custody and possession of two minor children of tender years, the court of civil appeals of Texas said: "The paramount issue in

proceedings of this character is whether or not the best interest of the minor demands that its care and custody should be taken from one person and committed to that of another; ...... the fact, if established, that at the date of the Mississippi judgment, April 9, 1918, appellant was the proper person to whom to commit the custody of the children, and that it was then for the best interests of the children that they be committed to him, would not deprive the district court of Texas, before whom this proceeding was instituted, of the power of determining whether it was then, viz., September 30, 1918, for the best interest and welfare of said children that their custody and control should remain with the father.''

In Jernigan v. Garrett, 155 Ga. 390, 117 S. E. 327 (1923), where a decree of a New Hampshire court awarding Mrs. Jernigan the custody of her child was introduced in an adoption proceeding in the Superior Court of Chatham County, Georgia, the Supreme Court of that state held that the decree of the New Hampshire Court awarding the custody of the child to Mrs. Jernigan did not preclude action by the Superior Court upon the question of awarding the child to the applicant; that under the full faith and credit provision of the Constitution of the United States the decree did place the custody and control of the child in Mrs. Jernigan at the time at which the decree was rendered; but that evidence showing changed conditions and that Mrs. Jernigan had become an improper person to have charge and custody of the child would authorize the award of its custody to another person.

In no case was this right of a court to disregard the judgment or decree of a court of another state relating to the custody of a child, and decide the question solely on the ground of its best interests and welfare, more strongly and forcibly presented than by the

Supreme Court of North Carolina in re Hugh Alderman, 157 N. C. 507, 73 S. E. 126 (1911), whose juvenile court is now insisting that its decree must be enforced in this State. In that case petitioner and respondent, father and mother of the child, were divorced in Florida at the instance of the respondent and a decree entered awarding her the general custody of the child but directing that the father should be allowed to visit the child at such time as to his wife might seem reasonable and that the child might visit the father "at such time and under such circumstances and conditions as are reasonable and expedient, and said child may at least be permitted to visit W. F. Alderman [the father] for two weeks at a time ...... if W. F. Alderman so desires." The respondent removed with the child to North Carolina and the petitioner brought these proceedings to enforce the decree of the Florida court as to his partial custody of the child. The court said: "If the language used were compulsory in its terms, that clause of the decree is not such a judgment of another state which the courts of this State are bound to enforce." The opinion cites with approval In re Bort, supra; Avery v. Avery, supra; and Wilson v. Elliott, supra, and holds in effect, that a judgment of a court of a sister state awarding the custody of a child to the wife obtaining a divorce has no extraterritorial effect ...... that the child on coming to North Carolina is not under the control of the courts of the sister state, and such judgment is not entitled to full faith and credit, and in a combat for the custody of the child the courts of North Carolina are governed only by what is for the best interests of the child.

I think that decision correctly states the law; that decrees awarding the custody of children are not property judgments but relate to matters concerned only with the welfare of the children and are subject to

change and modification as their interests require, and have no extra-territorial effect beyond that allowed by the court of appeals of New York in Allen v. Allen, supra, "as a fact or circumstance bearing upon the discretion to be exercised."

In the present case it appears that Mrs. Bryant prior to her marriage was a resident of Philadelphia; that her husband, a naval officer, shortly after their marriage developed tuberculosis, and they removed to Asheville, N. C., on account of his health. For sometime he has been confined in a sanatorium for tubercular patients. Mrs. Bryant and the two children lived in a house in that place. A proceeding was instituted in the juvenile court to take the children from their mother, on the ground that by reason of her intimacy with a man living in Asheville she was not a fit person to take care of them, and after a "hearing," at which no testimony was taken, but merely on the strength of a prior conversation between the judge and Mrs. Bryant, the juvenile court on July 14, 1927, awarded the children to a boarding-house keeper in Asheville, not related to any of the parties, with directions that they should be taken to the sanatorium to see their father every day and that the mother should be allowed to see them once a week. While in my opinion the "hearing" was not a hearing as generally understood, yet Mrs. Bryant was present when the decree was entered and took no appeal. She was concluded by it. In November, 1927, Mrs. Bryant brought the children to Philadelphia and placed them in the custody of her aunt, Mrs. Daven, with whom she and they have been living ever since.

There is no evidence that the misconduct with the man in Asheville, which caused the court there to act, has continued since Mrs. Bryant's removal to Philadelphia.

Her aunt, with whom she and the children live, is admittedly a woman of high character, who would take good care of these young children.

The municipal court should have heard evidence on the present status and condition of the children and adjudged whether their welfare and interest would be better served by leaving them in the care and custody of Mrs. Daven, or their mother, in Philadelphia, or by returning them to the unrelated boarding-house keeper in Asheville to whom the juvenile court of Buncombe County awarded them.

As the municipal court did not pass on that question, the vital issue in the case, I would reverse the order and remit the record to that court to hear and determine into whose custody it is for the best interest and welfare of the children that they should be given.

We are not concerned in this proceeding with any contempt of which Mrs. Bryant may have been guilty in removing the children to Philadelphia.

CUNNINGHAM, J., joins in this dissent.