W. B. HOWERTON and others v. JOHN T. SEXTON.

*Guardian and Ward—Partition, sale of land for—Setting aside order of sale—Wills.*

1. The act requiring service of summons and copy of complaint upon infant defendants before appointment of guardian *ad litem*, went into operation after this proceeding was begun. THE CODE, §387, curing defects where there was no such service, adverted to.

2. This case is governed by the former law (C. C. P., §59), and the failure of the guardian to answer the petition to sell the land for partition worked no injury to the parties, it appearing that a sale was necessary to their interest.

3. In such case, the court will not set aside the sale for want of precision in the record, and in the absence of fraud.

4. The testator expressed a wish that farm profits be applied to debts and then to education of children, but they turned out to be insufficient for this purpose; and a sale of the land was upheld, as the interest on the money would more directly conduce thereto, and as there was nothing in the will to prohibit conversion.

5. This case is remanded to the end that there may be an enquiry as to the payment of the purchase money and the manner of its disposition, and that other parties defendant may be brought in if necessary.

CIVIL ACTION tried at Fall Term, 1882, of NASH Superior Court, before *MacRae, J.*

The exceptions to the referee's report in this case were overruled, and the report confirmed. Judgment; appeal by the defendant.

. *Messrs. J. J. Davis* and *C. M. Cooke,* for plaintiffs.
*Messrs. Bunn & Battle* and *Battle & Mordecai,* for defendant.

SMITH, C. J.   This action has for its object the annulling and setting aside of certain proceedings instituted before the clerk of the superior court of Nash for the partition and sale of a tract of land devised to the plaintiffs, William B., Wiley F. and Sallie B., wife of the plaintiff B. T. Draper, and their brother, George Howerton.   The grounds on which their validity is impeached are assigned to be the irregularity and defects apparent in the conduct of the proceedings, the infancy of the several tenants in common, and the absence of any defence of their interests, and the terms contained in the devise of the land to them.

The cause was referred, and is before us upon the defendant's appeal for a revision of the numerous exceptions taken to the report and findings of fact and law.   It is necessary for us to consider but the preliminary conclusion arrived at by the referee and affirmed by the judge, that the proceedings in the probate court terminating in a sale of the land of J. R. Moore, by deeds from whom the defendant derives his claim, are inoperative and void, and that the plaintiffs' title thereto was not divested and transferred to the purchaser.

The transcript from the record of the probate court shows the following successive steps to have been taken in that action:

1. The filing of a petition by the said George T. Howerton, wherein he alleges himself to be of the age of twenty years and without guardian; his intention to institue suit against the present plaintiffs, his co-tenants, for the partition and sale of certain

real estate derived from their mother, the said Henrietta, and asks for the appointment of John A. Drake, the executor named in the will of the testatrix, a competent and responsible person, as his guardian *ad litem* to prosecute the suit in his behalf.

2. The order of the probate judge, in response to the application, making the appointment and authorizing him to prosecute the proposed action.

3. The filing of the petition of the said George T. against the said William B., Wiley T. and Sallie B. Howerton, reciting that they are tenants in common of certain real estate, consisting of about four hundred acres, in the county of Nash; that the petitioner will arrive at full age before the first day of January, 1871, and desires to have his separate one-fourth part thereof; that an actual equal division cannot be made without injustice to some of the tenants, inasmuch as the dwelling and out-houses, with a few acres, would exceed the ratable value of a share, the residue being in large part uncleared and not in fit condition for cultivation, and that it would be to the interest of all to have a sale in order to a partition. The petitioner thereupon asks for an order of sale and the designation of the said J. A. Drake as commissioner to make it.

4. The application in the names of the three infant defendants, showing their respective ages, the youngest, Wiley T., being over fourteen years old, and none having a regular guardian; the institution of the action for partition; and praying for the appointment of John T. Sexton, a competent and responsible person, as their guardian *ad litem* to defend their interests therein.

5. The order of the court declaring the said Sexton to be competent and responsible, and appointing him to such office, with authority on behalf of the infant applicants to defend the action.

6. The summons issued against said Sexton on October 27th, 1870, and his acceptance of service thereon on November 7th following:

7. The decree of sale made on the day last mentioned, declar-

ing it to be for the benefit of the tenants that the land be sold, and ordering and directing "that John A. Drake, commissioner, have a license to sell the said land described in the petition for division," at the place and on the terms and conditions therein specified and prescribed.

8. The report of the sale made by the commissioner on December 12, for the sum of three thousand nine hundred and ten dollars, but without mentioning the name of the purchaser, the said J. R. Moore.

9. The decree of confirmation as follows: "This cause coming on to be heard, and it appearing that the said J. A. Drake, commissioner, on the 7th day of December, 1870, sold at public sale to —— the lands described in the petition at the price of $3,910, upon the following terms, to-wit:

"Thirty dollars cash, balance on a credit of six months, &c., and the said sale appearing to be just and reasonable, it is therefore ordered and decreed that the same be in all respects confirmed, and that the said J. A. Drake, commissioner as aforesaid, upon payment of the purchase money, after first paying costs of suit, shall distribute the surplus among such persons as would have been entitled to the land according to law.

"It is further ordered that upon the payment of the purchase money and every part thereof, the said J. A. Drake, commissioner as aforesaid, execute and deliver to the purchaser a deed for said lands. This 7th day of December, 1870."

There is a repugnancy between the date of the commissioner's report and the date of the decretal order of confirmation, but the recitals in the latter show it was in fact posterior in time to the report, and thus the seeming difficulty is removed.

10. A second report from the commissioner dated on February 12th, 1872, representing that the purchaser had failed to pay the residue of the purchase money, that the land sold for a good price, and the bond taken was entirely solvent, and asking for further directions in the premises.

This terminates the action in the probate court, but the evi-

dence shows, and the referee so reports, that the said Moore, being unable to pay, or becoming tired of his bargain, on September 1st, 1872, sold and conveyed the land to the said Sexton for thirty-four hundred dollars, a loss of more than $500 on his own bid, and at the same date took a conveyance of title from the commissioner. The concurrent testimony of all the witnesses established the fact that a full price was bid for the premises, and the estimates of most of them put that sum largely in excess of the true value, so that no detriment has thereby come to the several owners.

The said George T., at whose instance the sale was made, has received his share of the proceeds, and being content therewith refuses to unite with the other tenants in the prosecution of the present action, to disturb what has been done in the probate court.

The plaintiffs impeach the validity of the proceedings for partition upon several grounds, to which we now direct our attention.

It is objected:

1. The infant defendants were not properly before the probate court and are not concluded by what was done:

It is to be observed that the law, then in force, is that contained in the Code of Civil Procedure, §59, part 2, which authorizes the appointment of a guardian *ad litem* to defend an action against an infant "upon the application of an infant if he be of the age of fourteen years and apply within twenty days after service of summons."

The subsequent act requiring service of summons and a copy of the complaint upon one or more infant defendants, before the power of appointment can be legally exercised, went into effect on April 5th, 1871, and has consequently no application. Acts 1870–71, ch. 233, §2.

The application in the present case was presented and acted on at once, before and without the issue of the summons, the service of which would give notice of the pending of the suit,

and of this they already had information without such service.

2. The guardian *ad litem* put in no answer and thus failed to protect the interest committed to his keeping and defence :

It does not appear that any successful resistance could have been made to the prayer of the petition, or that any injury accrued therefrom to any of the defendants. His silence *then* we cannot *even now* see to have been to their prejudice or to involve any dereliction of duty to them.

3. It was not shown that an actual division could not have been made advantageously to the tenants, and that a sale was necessary.

The petition assigns the reasons why an actual separation of the land into parts could not be effected without injury to the interests of the parties, and the decree of sale itself recites "that it would be of benefit to said heirs to sell said land for division." Nor does it now appear to the contrary of the finding of the probate judge.

4. The written application of the defendants for the appointment of a guardian *ad litem* and the designation of the person chosen by them, does not bear the signatures of any of them, and is, as is also the order of appointment, without date:

While this is true, the names of all do appear in the body of the petition, and it is accepted and acted on as their petition, and becomes part of the record. The date is not of the essence of the application and its recitals fix the period of its presentation as being *after* the filing of the petition for partition and *before* the decree of sale.

While it must be conceded there is a want of precision and a great disregard of form manifest in the record of proceedings, they are not in our opinion sufficient to invalidate the sale made under the order of the court in the absence of evidence of any fraudulent practice in bringing it about, and when it plainly appears to have been to the interest of all to have the sale confirmed.

The complaint further alleges that the sale was in contraven-

tion of the terms of the devise of the land, and, therefore, void:

The testatrix does express a wish that the farm be managed by her sons, George T. and William B., under the advice of her executor, and the profits be applied in payment of her debts and in the education of her two younger children, Wiley T. and Sallie B. But the proceeds of the farm were insufficient to accomplish this purpose, and if the interest on the money for which it sold would more directly conduce thereto, there is nothing in the will to prohibit conversion.

In this connection we advert to the curative statute, passed after the amendment that requires personal service of the summons upon the infants or some of them in order to their being brought into court and made parties, which in express terms declares valid, effectual and binding against such, all decrees and judgments rendered in actions pending on March 14th, 1879, or determined before that time, although no personal service of summons had been made. THE CODE, §387.

While, then, we cannot pronounce null the proceedings by virtue of which the land was sold, and thus needlessly disturb public confidence in the efficacy of judicial action, we are not satisfied as to the payment of the purchase money and the manner of its disposition, and we think these plaintiffs have a right to an enquiry in reference thereto. To this end the judgment must be reversed and the cause remanded in order that this enquiry be made, and if necessary other parties defendant be brought in.

This conclusion dispenses with the examination of the other exceptions, which are consequent upon the ruling that the proceedings for partition are a nullity and the sale void, and involve the adjustment of equities growing out of that adjudication and dependent upon it.

There is error. The judgment must be reversed and the cause remanded for further proceedings according to this opinion.

Error.                                                    Reversed.