JACKSON B. HARE v. JESSE HOLLOMON et als.

*Burnt Records—Recitals in Deeds—Infants—Service on— Guardian ad litem—Judgment irregular.*

1. Where records have been burned or destroyed, the entries in the bound volumes containing the minutes of the Court are admissible in evidence, to establish the regularity of the proceedings.

2. Where land has been sold under a decree of Court, and the records have been destroyed, the recitals in the deeds are evidence of the regularity of the proceedings.

3. Where, under the former system, a petition to sell land for assets was filed in a Court having jurisdiction of the proceeding, and a guardian *ad litem* was appointed, but no service was made on the infants; *it was held*, that even if the judgment was irregular, it was not void, and could not be attacked collaterally.

4. A judgment rendered before the adoption of the Code of Civil Procedure against infants who were not served with process, but who were represented by a guardian *ad litem*, is valid and binding on the infant, unless it appears that no real defence was made for the infant, and that he has suffered thereby.

5. A judgment against an infant who has not been served with process is not void, and will not be set aside to the prejudice of a *bona fide* purchaser without notice.

6. *It seems* that under the provisions of The Code, §387, decrees against infants who were not served with process are binding, except where fraud enters into and vitiates them.

(*Kello* v. *Maget*, 1 Dev. & Bat., 414; *Harrell* v. *Hare*, 70 N. C., 658; *State* v. *Glisson*, 93 N. C., 506; *White* v. *Albertson*, 3 Dev. 241; *Matthews* v. *Joyce*, 85 N. C., 258; *Larkins* v. *Bullard*, 88 N. C., 35; *England* v. *Garner*, 90 N.C., 197; *Williams* v. *Harrington*, 11 Ired., 616; *Marshall* v. *Fisher*, 1 Jones, 111; *Howerton* v. *Sexton*, 90 N. C., 581, cited and approved).

CIVIL ACTION, tried before *McKoy, Judge,* and a jury, at July Special Term, 1884, of HERTFORD Superior Court.

This was a civil action, prosecuted under a claim of title for the recovery of the possession of the land described in the complaint and withheld by the defendants. It was in evidence that the land formerly belonged to one Josiah Bridgers, who, at his death, in May, 1831, devised the same, subject to the life estate therein of his surviving widow, Charlotte, to John P. Bridgers. The life tenant died in March, 1869, whereupon the plaintiff immediately entered upon the premises, claiming to be owner of the estate in remainder, by virtue of a deed of conveyance made to him on October 20th, 1868, by Timothy Q. Copeland and wife Irene, and continued in the occupation and use thereof until November, 1881, when, without legal process, he was ejected by some of the defendants, all of whom have since remained in possession. John P. Bridgers died intestate, early in 1854, leaving the *feme* defendants Sarah E. and Margaret C., Mary Bridgers, who has since died without issue, Joseph P. Bridgers, John C. Bridgers, and William Bridgers, his children and only heirs at law.

In deducing title from the said John P. Bridgers, the plaintiff introduced from the clerk's office, a bound volume, which purported to contain the records of the county Court of Hertford, from February Term, 1854, to August Term, 1867, and proposed to read therefrom the following entries, as of May Term, 1856:

"Letters of administration on the estate of John P. Bridgers are granted to William Dunning, to whom special letters of administration on said estate have been granted since the last term of this Court, who entered into bond for the sum of twenty-five hundred dollars with William W. Mitchell, Pleasant Jordan and John A. Anderson, sureties thereto, which bond is accepted by the Court, and he duly qualified as administrator by taking the oath required by law."

"WILLIAM DUNNING, administrator of ⎫
    JOHN P. BRIDGERS, deceased,    ⎪
          *against*          ⎬
JOSEPH P. BRIDGERS and others, heirs ⎪
    at law of JOHN P. BRIDGERS.   ⎭

"Petition for the sale of land as assets in the administrator's hands. L. M. Cowper is appointed guardian *ad litem* to the defendants, who accepts service of the petition and submits to a decree."

"It appearing to the Court that the personal estate of John P. Bridgers is insufficient to pay his debts and charges of administration, it is decreed that William Dunning, his administrator, have a license to sell the land mentioned in the petition, on a credit of six months, on the premises, after advertising the same according to law, in order to pay the debts of his intestate and the charges of administration; and that the petitioner make title to the purchaser when the purchase money is paid."

"Issued copy of decree."

It was shown by the present clerk, and others, that the book had been always kept in his office, as a record of the county Court, and was so treated; that the entries were all in the hand writing of L. M. Cowper, who was, in 1856, and had been many years before, clerk of that Court. It was also proved that the court-house had been twice burned—once in August, 1831, and again in the year 1862.

The introduction of this evidence was opposed by the defendants, but admitted by the Court, and exceptions entered. The plaintiff then produced a deed from William Dunning, administrator of John P. Bridgers, made June 10th, 1857, to one Kindred Copeland; a deed from William M. Montgomery, Clerk and Master in Equity of said county, executed on May 1st, 1862, to Timothy Q. Copeland, and a deed from Timothy Q. Copeland and wife Irene, to himself, the plaintiff, dated on October 28th, 1868. These deeds were all duly proved and registered, and describe and purport to convey the tract of land in

dispute. The first mentioned deed contains a recital in these words:

" That, whereas, the said William Dunning, administrator as aforesaid, by authority of a decree of the County Court of Hertford, at August Term, 1856, last past, directing the said William Dunning, administrator as aforesaid, to advertise and make sale of a certain tract or parcel of land, which the said John P. Bridgers died seized and possessed," &c., describing the tract, " which, reference being had to said order and decree, will more fully and at large appear; and whereas, the said William Dunning, administrator as aforesaid, and by virtue and authority of said decree, did, on the 10th day of October last past, on the premises, after advertising agreeably to act of Assembly, offer the aforesaid tract or parcel or land for sale, at public auction, on a credit of six months, when the said Kindred Copeland appeared and bid the sum of twelve hundred and fifty dollars, being the highest and best bidder, and so became the purchaser; and whereas, the said William Dunning, administrator as aforesaid, did, at May Term, 1857, last past, report to the said County Court of Hertford county, the sale of the land as aforesaid, when the said Court ratified the said sale, and further decreed that the said William Dunning, administrator as aforesaid, should make a deed to the said Kindred Copeland, which reference being had to said decree will more fully and at large appear. Now, this indenture witnesseth," &c.

The second deed from the Clerk and Master in Equity recites:

" That, whereas, by virtue of a decree of the Court of Equity, obtained at Fall Term, 1860, by the heirs of Kindred Copeland, deceased, for the sale of certain real estate, of which the said Kindred Copeland died owning the same, but not in possession, and the clerk and master being authorized by said decree, did, on the 10th day of June, 1861, expose to public sale upon the premises, one tract of land lying in said county, adjoining," &c., " which was purchased by the said Timothy Q.

Copeland, for the sum of twelve hundred and fifty dollars, he being the last and highest bidder. Now, I, the said William M. Montgomery, clerk and master as aforesaid, for," &c.

The last deed conveys the same land for the consideration of one thousand dollars to the plaintiff. It was shown that upon the death of Kindred Copeland, the land descended to Annie, who intermarried with Levi Davis, and W. A. Copeland, his heirs-at-law, and was sold for partition under a decree of the said Court of Equity. The *feme* defendants Parker and Hollomon, were married during the life of said Charlotte Bridgers, and before attaining full age, while the other heirs-at-law of John P. Bridgers each became twenty-one years of age before the plaintiff's eviction, and have been under no disability.

The defendants insisted that these fragmentary memoranda found upon the records of the former county Court, were insufficient proof of any judicial action, which could have the legal effect of divesting the estate which descended to the heirs-at-law of the intestate and transferring it to the purchaser at the administrator's sale. The Court declined so to charge, and left the inquiry, upon the evidence, to the jury, who rendered a verdict for the plaintiffs.

From the judgment rendered thereon the defendants appeal.

*Mr. W. D. Pruden*, for the plaintiff.
*Messrs. Winborne* and *R. B. Peebles*, for the defendants.

SMITH, C. J. (after stating the facts). We sustain the ruling of the Court as to the admissibility of the record evidence of the proceeding instituted for the sale of the land, and the action of the Court thereunder. Not only do these entries show the special facts which they recite, but by aid of the maxim *omnia presumuntur rite esse acta*, they furnish inferential evidence of the regularity of that precedent action, upon which the validity and efficacy of what those entries show to have been done by the

Court, were dependent. This rule is indispensable, when, as in the present case, the original papers in the cause have been burned or lost. Some references will serve to illustrate the principle.

In *Kello* v. *Maget*, 1 Dev. & Bat., 414, the petition was filed under the Act of 1830, passed for the relief of such persons as may suffer from the destruction by fire of the records of Hertford county, to establish and enforce a guardian bond, in reference to which GASTON, Judge, uses this language: "But it was to be inquired, first, whether such a bond had ever been given; secondly, if given, whether the defendant's intestate was one of the obligors; and, finally, what were the contracts or terms of the bond. The appointment of Daughtry as guardian, was admitted in the pleadings, and *upon that appointment, a legal presumption arose that he executed a guardian bond, since such a bond is made a pre-requisite to the appointment.*"

Again, an entry on the records of the same county Court in these words: "James Clark, guardian for Mason Harrell, Sarah Elizabeth Harrell and James Thomas Harrell, orphans of John T. Harrell, deceased, appeared in open court and renewed his bond as guardian, by entering into bond for the sum of $3,000, with W. M. Montgomery and J. B. Hare, sureties," was held evidence to go to the jury of the existence, execution and terms of the bond, against the defendant in *Harrell* v. *Hare*, 70 N. C., 658. In a recent case, *State* v. *Glisson*, 93 N. C., 506, it is said that the examination of a witness without objection, raises, ordinarily, a presumption that he was properly sworn, because the taking an oath is an indispensable condition to his giving testimony. The statute made to meet cases like the present, interposes and gives legal force to recitals in records, deeds and exhibits, surviving a destruction of the originals.

" The recitals, reference to, or mention of, any decree, order, judgment or other record of any court of record of any county in which the court house, or records of said courts, or both, have

been destroyed by fire or otherwise, contained, recited or set forth in *any deed of conveyance,* paper writing, or other *bona fide* written evidence of title, executed prior to the destruction of the court house and records of said county, by any executor or administrator with a will annexed, or by any clerk and master, Superior Court Clerk, Clerk of the Court of Pleas and Quarter Sessions, sheriff or other officer, or *commissioner appointed by either* of said Courts, and authorized by law to execute said deed or other paper writing, shall be *deemed, taken and recognized as true in fact,* and shall be *prima facie* evidence of the *existence, validity* and *binding force* of said decree, order, judgment or other record so referred to or recited in said deed or paper writing, and shall be to all intents and purposes, binding and valid against all persons mentioned or described in said instrument of writing, deed, &c., as purporting to be parties thereto, and against all persons who were parties to said decree, judgment, order or other record so referred to or recited, and against all persons claiming by, through, or under them, or either of them." Code, §69.

The next section makes deeds of conveyance, registered according to law, "*prima facie evidence* of the *existence and validity* of the decree, judgment, order or other record upon which the same purports to be founded, without any order or further restoration or re-instatement of said decree, order, judgment or record, than is contained in this chapter. §70.

The petition of the administrator, as shown in the docketing of the cause, is against Joseph P. Bridgers and others, heirs-at-law of John P. Bridgers, and as the married defendant is one, so it is shown on this trial who were the others, all of whom were the heirs-at-law of the intestate. It is therefore a reasonable inference that the petition did set out the names of the others, as well as the name of one of the defendants, to whom as a class the land descended. And the same conclusion is deducible from the order of sale made in pursuance of the application.

The next objection to the proceeding is, that the infant defendants were not served with process, and were not rightfully before the Court, so that the action of the Court is inoperative as to them, and leaves their title undisturbed.

This objection cannot be sustained. Whether served with process or not, there was a guardian *ad litem* appointed by the Court to defend the interests of the infant heirs, and recognizing this representation, the Court proceeded to adjudicate the cause, the subject matter of which and the conversion of the land into assets by an authorized sale, was within the jurisdiction of the Court.

The judgment, if irregular, was not therefore a nullity, but remained in force until set aside or reversed by some proper proceeding directed to that end.

Under the former mode provided for the creditor to subject the lands of his debtor to the payment of the debt, after the ascertained deficiency of the personal estate, by the issue of a *scire facias* against the heirs or devisees, the process did not issue against the heirs, but service was admitted by the guardian, and the Court held that the infants were in Court, and assigned as the ground of the ruling, that the Court so deciding was the proper judge, and that the record could not be contradicted in the collateral way proposed. *White* v. *Albertson,* 3 Dev., 241-243.

In *Matthews* v. *Joyce,* 85 N. C., 258-264, the Court say, " a different practice has long and almost universally prevailed in this State, and this power of appointment, (of a guardian *ad litem* to infant defendants), has been generally exercised without the issue of process, for the reason that no practical benefit would result to the infant from such service on him, and the Court always assumed to protect the interests of such party, and to this end committed them to the defence of this special guardian," and cases are referred to in support of the practice.

In *Larkins* v. *Bullard,* 88 N. C., 35, certain infants were directed to be made parties, but were not served with process, nor was any guardian *ad litem* appointed for them, nor did their

names anywhere appear in the record, and it was held that the judgment rendered against them was irregular, and the Court had the power to set it aside, RUFFIN, J., saying, "it would be a plain violation of right, to leave the judgment standing so as to *operate as an estoppel upon these* infants, when the Court can see that no real defence was ever made for them." Again : In reference to this point, MERRIMON, J., in *England* v. *Garner*, 90 N. C., 197-201, uses this language in answer to a suggestion that a judgment against a defendant not of full age was void : " If he was an infant, this fact did not render the judgment as to him absolutely void. It was irregular, and might upon proper application have been set aside, not however to the prejudice of *bona fide* purchasers without notice," citing *White* v. *Albertson, supra*; *Williams* v. *Harrington*, 11 Ired., 616 ; *Marshall* v. *Fisher*, 1 Jones, 111 ; *Freeman on Judgments*, §513.

In *Day* v. *Kerr*, 7 Mo., 426, it was held that, where infant defendants were not served with process, but the record showed that, upon their motion, a guardian *ad litem* had been appointed who proceeded in the cause, the decree against the infants was not void and could not be collaterally impeached.

In answer to the suggestion that the interests of the infants were left unprotected, we but repeat the words used in response to a similar objection in *Howerton* v. *Sexton*, 90 N. C., 581–586. "It does not appear that any successful resistance could have been made to the prayer of the petition, or that any injury accrued thereupon to any of the defendants. His silence *then*, we cannot even now see to have been to their prejudice, or to involve any dereliction of duty to them." Nor, we may add, does it appear that the property did not bring its full value, or that any surplus would be left after payment of the intestate's debts, to come to the heirs. We should be reluctant to disturb titles acquired under the former practice, universally recognized and acted on in this State, thus introducing distrust and confusion in regard to the tenure of estates and the loss of confidence in the judicial action of the Courts, the mischievous results of which

can hardly be foreseen, and we could do so only under clear and cogent convictions of error entering into them. We may add that the General Assembly seemed to have anticipated similar controversies and to have furnished relief in the two enactments of 1879, ch. 257, and of 1880, ch. 23, embodied in The Code, §387. This legislation declares valid and binding decrees rendered where infants were not, as if they had been, served with process, except when fraud enters into and infects them.

It must be declared that there is no error, and the judgment is affirmed.

No error.                                                    Affirmed.