This case, entitled in the transcript sent to this Court"Carraway v. Lassiter," is a motion in a cause lately pending in the Superior Court of GREENE, in which R. L. Davis, executor of (147) L. V. Whitehead, is plaintiff (petitioner), and Geo. W. Carraway and wife, Inez, and others, are defendants. The plaintiff, R. L. Davis, executor, instituted the original proceeding by filing a petition in said court in the usual form, asking for license to sell a portion of the lands of his testatrix to make assets to pay her debts, etc., pursuant to sections 1436 et seq. of The Code. The record contains over two hundred pages of printed matter, a large portion of which is irrelevant and immaterial. The facts, as we gather them from the petition, answer and findings of the clerk, material to a decision of the questions raised by the exceptions of the petitioners, are: Mrs. L. V. Whitehead, late of the county of Greene, died on 14 December, 1895, seized and possessed of a plantation in said county containing 1100 acres, known as the "Streator Place." She left a last will and testament devising and bequeathing her entire estate, real and personal, to her granddaughter Inez for life, remainder to such children as she might leave surviving, and in default of issue, to the Oxford Orphan Asylum, naming R. L. Davis executor and guardian to her said grandchild, who was then a minor. The said will was duly admitted to probate in common form, and the said Davis duly qualified as executor thereto. He was also appointed and qualified as guardian to the said Inez. Thereafter a caveat to said will was filed by the next of kin, and the issue raised duly docketed in the Superior Court of Greene County on 6 March, 1896. At the time of her death the said L. V. Whitehead was indebted in an amount exceeding $4,000, the payment of which was secured by mortgages on the said land. On or about 12 October, 1896, the said Davis, executor, filed his petition in the Superior Court of said county, containing the averments prescribed by the statute and asking for an order to sell 846 acres, being a portion of said land. The remaining portion contained the dwelling house and improvements. The said Inez had, prior (148) to the filing of said petition and during her minority, intermarried with Geo. W. Carraway, who was also a minor, being about twenty years of age. Upon the filing of said petition, it appearing that the said Davis was both executor and guardian, he asked that some suitable person be appointed guardian ad litem for his ward, etc. On 12 October, 1896, and before any summons had issued, the clerk made an *Page 139 
order appointing T. E. Barrow guardian ad litem for said infant defendants. The petition named as defendants the said Inez and her husband, J. L. Wooten and wife, who held mortgages on said land, and the Orphan Asylum. On 15 October, 1896, the clerk issued a summons directed to the sheriff of said county, commanding him to summon the defendants, Inez and her husband, J. L. Wooten and wife, the Orphan Asylum and the said T. E. Barrow, guardian ad litem, to appear and answer the petition on 6 November, 1896. The petition is lost and the facts in regard thereto are found by the clerk upon the affidavits of the former clerk and the attorney who filed the same. The order appointing the guardian ad litem and the summons are in the judgment roll. The sheriff made a return of said summons, stating that he had served the same on the defendants Carraway and wife by reading it to them, and on T. E. Barrow, guardian ad litem, by delivering a copy. The summon on J. L. Wooten and wife was served by the sheriff of Pitt County. There is no record of any service on the Orphan Asylum. On the return of the summons the said guardian ad litem filed his answer, drawn by the clerk and signed by said guardian, admitting the allegations of the petition. This paper is lost. On 6 November, 1896, the clerk made an order, reciting that proper service of the summons had been made on all the parties defendant, and that the guardian ad litem had filed an answer, directing "the sale of the land described in the petition," after duly advertising the same, and that the executor make report to the court, etc. This order is on file. The said executor filed his report, stating that pursuant to said order (inadvertently referring (149) to it as having been made on 13 November) he had sold the lands on 7 December, 1896, at public auction at the courthouse door in Snow Hill, after duly advertising the same, and that T. U. Lassiter was the last and highest bidder at the sum of $4,000, which was a full and fair price therefor; that he was ready to comply with his bid, etc. The executor recommended that the sale be confirmed. On 18 December, 1896, the clerk made an order confirming said sale, in which it was recited that due and legal service of summons was made on all the defendants, and that they had admitted in their answers the allegations of the petition, etc. He directed the executor to collect the purchase money and make title to the purchaser. The purchaser paid the purchase money and the executor executed to him a deed for said lands, dated 30 December, 1896, which was recorded on 30 December, 1897. The order of confirmation was approved by the resident judge of the district on 26 December, 1896. The clerk finds that the attorney for the petitioner did not have any conversation with the guardian in regard to his *Page 140 
appointment or the preparation or filing of his answer. Nor did the petitioner attempt to use any undue influence to induce him to accept the guardianship. That said T. U. Lassiter was bona fide purchaser of said land for full value and without any notice of any irregularity, if there was any, in the special proceedings under and by virtue of which the land was sold; that the sale was fair and open, and the land brought its full market value at the time of sale; that Lassiter had no notice of any irregularity in the proceeding or of any cloud upon the title, nor of any other matter or thing, if there was any, which prevented him from getting a good title; that he bid on said land at the urgent request of Geo. W. Carraway, husband of Inez, and that he became the purchaser, believing that he would get a good title under the decree of the (150) court; that the personal estate of the said L. C. Whitehead was insufficient to pay her debts; that it was necessary to sell the land for that purpose; that the petition set out a description of the portion of the land to be sold. The petition contains a number of allegations and records referring to litigation pending in Pitt County at the time of her death by and against Mrs. Whitehead, in regard to her property. It is charged that one of said actions affected the title to a portion of the lands sold by the executor. It also appears that on 12 April, 1897, Lassiter sold and conveyed to R. L. Davis 330 acres of the Streater place for about $5 per acre. There is no evidence tending to show any agreement prior to or at the time of the sale, or during the pendency of the proceeding between Davis and Lassiter, in regard to the purchase of any portion of the land by Davis. They both expressly deny any such agreement. It appears that prior to December, 1897, the said Geo. W. Carraway, having attained his majority, qualified as guardian of his wife. At the December Term, 1897, R. L. Davis, executor, the said Carraway and wife, and Carraway as guardian, were made parties to one of the actions pending in Pitt Superior Court, and that they were also parties to an action pending in Greene Superior Court. At the time the petition was filed by R. L. Davis, executor, Mrs. Carraway had no issue. A child was born to her on 18 November, 1896; the said child died in its infancy. Davis, executor, filed his final account 7 November, 1899, showing the receipt and disbursement of the proceeds of the land sold by him. On 7 November, 1904, this petition was filed by Geo. W. Carraway and wife and their children, all of whom were born subsequent to the final decree in Davis, Ex., v.Carraway. The purchaser, Lassiter, and R. L. Davis filed their answers to said petition and the motion was heard by the clerk upon the petition, answers, affidavits and oral testimony. He found the facts as set forth and refused the motion. The *Page 141 
petitioners noted a number of exceptions to the rulings of the (151) clerk, and appealed to the judge of the district, who overruled the exceptions, approved the findings of the clerk, and affirmed his judgment. Petitioners excepted and appealed.
The petitioners except to a number of the clerk's findings for that there is no evidence to sustain them. The approval by the judge of the findings is conclusive, unless the exceptions can be sustained. We have read with care all of the affidavits, exhibits and admissions. In our opinion there is not only evidence to sustain the clerk, but in respect to the most material matters it is ample and uncontradicted. The exceptions cannot be sustained. In regard to the compromise of the litigation respecting Mrs. Whitehead's estate, the record shows that prior to the settlement the husband of Mrs. Carraway had qualified as her guardian and had been made a party thereto, together with his wife; that all parties were represented by learned and eminent counsel. The judgment of compromise indicates a careful regard for the rights of all parties. We find nothing in the record to sustain the suggestion that the debts paid by the executor from the proceeds of the land were not bonafide or the mortgages valid. The final account of the executor shows that they were paid and the estate duly and honestly administered. These matters are material only upon the assumption that the proceedings under which the land was sold are irregular, in which event it would be proper to inquire whether the petitioners show such merit as make it the duty of the Court to set aside the judgments rendered in the cause. Stancill v. Gay, 92 N.C. 455. It appears that since the filing of this petition Mrs. Carraway has died. The petitioners are not parties to the original proceeding; they claim title to the land as remaindermen after the termination of the life estate of Mrs. Carraway under the will of Mrs. Whitehead. If, as they contend, they are not bound by the judgment, they may not be heard to attack it. Hinsdale v. Hawley,89 N.C. 87; Knott v. Taylor, 99 N.C. 511. Being of (152) opinion, however, that they are bound, we proceed to consider their exceptions. If the proceeding had been one in which the life tenant had, for any proper reason, invoked the aid of the court to sell the land, as for partition, only those who were parties, either personally or by representation, would be bound by the decree. The proceeding is based upon the theory that the executor is by order of the court selling the lands of his testatrix which are subject to the payment of her debts, and the devisees or heirs at law are brought in that they may show cause why he may not have license to do so. If the petitioners had been in esse at the time the proceeding was instituted it would have been necessary *Page 142 
to divest their interest to make them parties. It cannot be that a person indebted may, by devising his lands, upon contingent limitations to parties not in esse prevent their sale for the payment of his debts until all who may by possibility take are born or every possible contingency is at an end. Mrs. Carraway, for the purpose of enabling the court to proceed in the cause, represented the entire title, and children thereafter born to her are bound by the judgment. The child born 18 November, 1896, pending the proceeding, but after the decree of sale, died in infancy and took no interest which could be affected by the sale. The petitioners contend that under the terms of the statute, Code, sec. 181, the clerk had no power to appoint a guardian ad litem; that such power is given only where the infant defendant has no general guardian. Their counsel contends that the clerk in respect to this proceeding derives his authority from the statute and is restricted to its terms, differing in that respect from the Superior Court, which has a general jurisdiction confined only by express limitations. The general principle is correct, and has been so held by this Court in the cases cited and relied upon. We think that the construction contended for is too narrow. Certainly the Superior Court has, independently of The Code, the power to appoint a (153) guardian ad litem for an infant defendant. It may at any time during the progress of the cause, for sufficient reason looking to the proper protection of the infant's interests, remove a guardian theretofore appointed and name some other person. We can see no good reason why the clerk, who acts as and for the court, may not do the same in special proceedings pending before him. The object to be obtained is the protection of the infant, whose interests is the special care of the court; the guardian ad litem is the officer of the court, and we can see no good reason or conflict with well-settled principles why it may not for any good reason appoint such guardian. We find no authority in this State, but inTownsend v. Tadant, 33 Cal. 45, the question was considered. The administrator who filed the petition in the probate court for sale of the lands of his intestate was also guardian of the infant heir at law. The Court said: "Schollenberger could not represent both sides of the record at the same time. The minor heir then having no guardian quoad the petition, it became the duty of the court before proceeding to act to appoint some disinterested person his guardian for the sole purpose of appearing for him and taking care of his interest."
The only serious question of law presented by the exceptions is whether the court acquired jurisdiction of the person of Inez Carraway. The petition was filed on or about 12 October, 1896, and the clerk on the 15th of the same month, and before any summons was issued, made an order *Page 143 
appointing a guardian ad litem. This was certainly irregular, and if not cured would have been fatal to any further proceeding. Clark's Code, sec. 181, and cases cited. The clerk on the same day issued summons, which was duly served upon the infant defendant and her husband and the guardian ad litem. This certainly brought her into court, as it did the guardian prematurely appointed. He filed his answer, and the court upon the return day proceeded to judgment. The petitioners earnestly contend that the failure to observe the proper order is (154) fatal and renders all further proceedings void. If the petitioners are correct in this contention on the facts appearing of record, they insist the purchaser was fixed with notice and cannot avail himself of the defense that he was a purchaser for value and without notice, notwithstanding the recital in the judgment of sale that "proper service of summons having been made on all parties defendant." We have carefully examined the cases relied upon by petitioners and find that the court has, in cases wherein the proceedings were instituted since the adoption of the Code, set aside judgments, etc., when no service of process was made upon the infants, and refused to do so when the infant was in court, notwithstanding irregularities in the proceeding. In Moore v. Gidney,75 N.C. 34; Gulley v. Macy, 81 N.C. 356; Young v. Young,91 N.C. 359; Stancill v. Gay, 92 N.C. 462, no summons was served on the infant defendant, guardians ad litem were appointed without personal service on the infants, and filed answers. This Court has in such cases invariably held that the court acquired no jurisdiction. When, however, personal service was made on the infants a contrary ruling has been made. InHowerton v. Sexton, 90 N.C. 581, Smith, C. J., says: "While it must be conceded that there is a want of precision and a great disregard of form manifested in the record, they are not in our opinion sufficient to invalidate the sale made under the order of the court, in the absence of evidence of any fraudulent practice in bringing it about, and when it plainly appears to have been to the interests of all to have the sale confirmed."
In Williamson v. Hartman, 92 N.C. 239, it appeared that while there was personal service on the infant there was none on the guardian adlitem, nor was any answer filed by him. Upon motion to set the judgment aside this Court, by Merrimon, J., said: "This, however, does not imply that every judgment affected in any degree, directly or indirectly, by some or any irregularity in the course of the action leading to it, will be set aside. Some irregularities are unimportant and do (155) not affect the substance of the action or the proceedings in it . . . Whether the court will or will not grant such a motion in *Page 144 
any case must depend upon a variety of circumstances and largely upon their peculiar application to the case in which the motion shall be made."White v. Morris, 107 N.C. 92. In Ward v. Lowndes, 96 N.C. 367, it is said: "This statute (section 181) should be strictly observed, but mere irregularities in observing its provisions, not affecting the substance of its purpose, do not necessarily vitiate the action or special proceeding or proceedings in them. The substantial purpose of this statute is to have infants in proper cases made parties defendant, have them make proper and just defense and to have their rights protected, and to this end have guardians make defense for them." Fowler v. Poor, 93 N.C. 466. Without undertaking to cite all of the many cases found in our reports involving the questions presented by this appeal, we are of the opinion that the service of process upon the infant defendant and the guardianad litem, followed by the filing of an answer by him, cured the irregularity in the order of the appointment. Certainly no harm came to the infant by reason of the irregular method pursued. At most it was an irregularity, and the adjudication made by the clerk that process had been duly served, if conceded to be erroneous, was not void; the parties were certainly at that time in court. The purchaser might with safety rely upon that judgment, followed by the approval of the proceedings before the payment of his money by the resident judge of the district. That the purchaser is only required to see that the court has jurisdiction of the person and the subject-matter is for his protection, in the absence of fraud, is settled by abundant authority. Williams v. Johnson,112 N.C. 424. The petitioner states the fact that the husband of Mrs. Inez Carraway was a minor of about the age of twenty years, (156) and that no guardian ad litem was appointed for him. This fact was not brought to the attention of the court. We do not think that the failure to appoint such a guardian affects the validity of the decree. He had no interest in the land, his wife having but a life estate. It would have been an idle thing to have two guardians ad litem in the record.
The petitioners further insist that by reason of the pendency of a caveat to Mrs. Whitehead's will the executor had no power or authority to file the petition or proceed with the sale of the land. It will be observed that the will had been proved in common form and Davis duly qualified. The Code, sec. 2160, provides that when the caveat has been filed and issue made the clerk shall further issue an order to the personal representative to suspend all further proceedings, etc. It does not appear that any such order was made. In the absence of such order we do not think that the acts of the executor were void or that the rights of *Page 145 
purchasers could be affected. But it is insisted that other litigation was pending in regard to the title to a portion of the land sold, and that by reason thereof and the pendency of the issue of devisavit vel non persons were restrained from bidding for the land. If this was true it would not constitute ground for setting the judgment, etc., aside. Such matters could only be considered as evidence in a separate action brought to attack the proceeding and sale for fraud by showing that the purchaser was cognizant of the facts and took some unfair advantage of them. The affidavit of the purchaser shows that he bid at the sale at the solicitation of the husband of Mrs. Carraway, and his and affidavits of several other persons present and bidding show that these facts were not known to them and did not affect their bids. Being of the opinion that the court acquired jurisdiction of the person and subject-matter and complied substantially with the requirements of the statute, we cannot conclude that the proceedings, judgment, etc., are void. Before the parties were in court no order was made affecting their rights, and (157) thereafter the proceeding was in all respects regular. In this view of the case we do not deem it necessary to consider many other questions discussed by counsel, such as the effect upon the purchaser's rights of the adjudication that the process was duly served, etc.
In sustaining the action of the clerk in this case we do not wish to be understood as encouraging or giving our sanction to the method of procedure adopted in the proceeding. The statute and rules for the guidance of courts in acquiring jurisdiction of the persons and estates of minors and all subsequent proceedings in such cases are mandatory and should in all cases be observed, not only for the protection of the parties to the proceeding, but of purchasers at judicial sales. It is to be regretted that records constituting important links in the chain of titles are so frequently lost. The statutes prescribe the manner in which records shall be kept. These mandatory provisions of the law should be observed. It also contemplates that a minute docket of all special proceedings shall be kept, in which it shall be noted at the time all steps taken from the issuance of the summons to and including the final decrees. It also contemplates that all orders, judgments and reports in the cause shall be spread upon the record. While in accordance with a wise policy the courts, in the absence of fraud, uphold judicial sales when attacked for irregularities, it is not because the law looks upon the order in which such proceedings are conducted as unimportant. It appears from the record in this case that the proceedings antedate the term of the present clerk. *Page 146 
After a careful consideration of the entire record and the briefs of counsel we find no error in the judgment. It must be
Affirmed.
Cited: Card v. Finch, 142 N.C. 146; Rackley v. Roberts, 147 N.C. 205;Yarborough v. Moore, 151 N.C. 120; Hobbs v. Cashwell, 152 N.C. 187;Hughes v. Pritchard, 153 N.C. 141; Dudley v. Tyson, 167 N.C. 70;Rawls v. Henries, 172 N.C. 218; Thompson v. Humphrey, 179 N.C. 58.