N. J. HARRIS et al. v. J. G. BENNETT et al.

(Filed 7 November, 1912.)

**1. Process—Service—Pleadings—Appearance—Judgments.**

It is not necessary to the validity of a judgment duly entered in the cause that the summons should have been served on defendants therein, when it appears of record that they filed their answer, which is equivalent to a general appearance.·

**2. Process—Irregularity—Appearance.**

A voluntary general appearance by the defendants to an action cures all defects and irregularities in the process.

**3. Process — Pleadings—Not Signed—Irregularities—Jurisdiction—Judgments.**

Parties defendant are held bound by a judgment in the cause, notwithstanding personal service of the summons was not made on them, when it appears by the record that the complaint was filed in due and proper form; a paper, in form and substance purporting to be the answer, though not signed, is found in the judgment roll, having been so filed for many years, and the judgment of the court itself recites that the case was heard upon complaint and answer; and the fact that the answer was not signed is a mere irregularity which does not affect the validity of the proceedings.

**4. Infants — Parties—Appearance—Guardian Ad Litem—Process—Service—Interpretation of Statutes.**

When it appears from the record that certain infant parties to the suit were represented by a guardian *ad litem*, and that their interests had been fully protected, the judgment entered therein will not be set aside upon the ground that the infants had not been personally served with summons and no order had been made appointing a guardian *ad litem* when the rights of innocent parties have intervened, the omission to serve the infants with process being cured by Revisal, sec. 441.

**5. Infants—Guardian Ad Litem—Presumptions—Irregularities—Motion in Cause—Procedure.**

When it appears from the record that infant parties to a cause had been represented by a guardian *ad litem*, who was recognized as such by the court in proceedings to judgment therein, the authority of the guardian to represent the infants cannot be attacked in an independent action, but only by motion in the original cause, for irregularity.

6. Infants—Judgments—Irregularities—Innocent Third Person—Intervening Rights.

The courts will not vacate an irregular judgment against an infant as of course, and it will not do so when it appears of record, or otherwise, that the infant has suffered no substantial wrong, and the rights of innocent third parties, who have purchased for value and without notice, have intervened and will be prejudiced.

7. Judicial Sales—Purchasers—Notice of Defects.

A purchaser at a judicial sale is only required to see that the court had jurisdiction of the parties and the subject-matter of the proceedings, and that the judgment authorized the sale.

8. Judgments — Irregularities—Remaindermen—Parties—Limitation of Action—Laches.

While the statute of limitations will not begin to run against an action by the remainderman to recover possession of lands until after the death of the life tenant, this principle does not apply to proceedings to avoid a judgment entered against his interest, to which he was either a party or apparently a party; for in such instances he may institute his action at any reasonable time within which laches may not be imputed to him.

9. Judicial Sales—Judgments—Irregularities—Third Person—Intervening Rights—Equity.

The devisees of the remainder in lands sues to recover the lands devised to them. The testator died insolvent in 1865, and his executors brought proceedings in 1868 to sell the testator's lands to make assets to pay his debts, and the lands in controversy were bought by the one under whom defendant deraigns his title: *Held*, in this case, no meritorious defense to the proceedings in which the sale of the lands was decreed is set up, which were regular upon their face, but only a defect in the service of infant defendants therein; and that no equitable purpose would be subserved in setting aside the decree of sale.

APPEAL by defendants from *Carter, J.,* at March Term, 1912, of NASH.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*Jacob Battle for plaintiff.*
*T. T. Thorne and Bunn & Spruill for defendant.*

WALKER, J. This action was brought by the plaintiffs to recover the possession of the land described in their complaint,

it being a part of the "Culpepper place," formerly belonging to the late Nicholas W. Arrington, who, by his will, devised it to his daughter, Tempie Ann Harris, for life, with remainder to her heirs, who are the plaintiffs. Mr. Arrington died in the year 1865, insolvent. He owed a very large sum, which his assets were wholly insufficient to pay. He appointed L. N. B. and L. F. Battle his executors, who qualified as such, and in 1868 commenced a special proceeding before the clerk of the Superior Court for a sale of his realty to pay his debts. The land was sold, including the "Culpepper place," and the sale was confirmed as to all of it except that place, and a resale ordered as to it. One of the executors having resigned, and the other having been removed, the Hon. B. H. Bunn was appointed administrator *de bonis non,* with the will annexed. Under the order of the court just mentioned, he sold the land, and it was purchased by Mrs. Tempie Ann Harris for $2,010, and she assigned her bid to Enos Ward and his associates, and the deed for the same was made to them. The defendants claim, by mesne conveyances, under them. In a second cause of action, the plaintiffs seek to determine adverse claims to real property, or to quiet their title, by removing a cloud therefrom. Their right to relief, as seems to be conceded by all the counsel, depends upon the validity of the proceeding for the sale of the lands of Mr. Arrington, to which we have referred.

Plaintiffs attack these proceedings upon the ground that they were not parties thereto, and therefore are not bound by the judgment therein rendered; and if the fact be true, or, in law, they are not to be regarded as parties, their reduction follows inevitably. *Stancill v. Gay,* 92 N. C., 462; *Harrison v. Harrison,* 106 N. C., 282. But we think that they are bound by that proceeding, and that they cannot successfully assail it in this suit, nor can they assert its invalidity against the defendants, whose predecessors in the title were purchasers for value and without notice of any material irregularity therein.

The record of the proceeding for the sale of the land, which was made a part of the same, discloses that a summons was issued, but not served, but that the defendants named in the writ came in and answered. This is equivalent to appearance, and

waives the service of process, the object of which is to bring the defendants into court and to subject them personally, by service of the writ, to its jurisdiction. If they come in voluntarily and appear or answer, the same result is accomplished. A general appearance cures all defects and irregularities in the process. *Wheeler v. Cobb,* 75 N. C., 21; *Penniman v. Daniel,* 95 N. C., 341; *Roberts v. Allman,* 106 N. C., 391; *Moore v. R. R.,* 67 N. C., 209. In the case last cited, *Justice Rodman* said: "The defendant nevertheless appeared and answered in bar. The irregularity was thereby waived. If no summons at all had been issued, the filing of a complaint and answer would have constituted a cause in court." This is elementary learning. But counsel for plaintiffs, in an exceptionally able and learned brief, contended that, in fact, no answer was filed, or any pleading which the law will regard as an answer.

The complaint was filed in due and proper form, and, as appears from the judgment roll, a paper purporting, in form and substance, to be the joint answer of the defendants, was also filed. It was not signed, but so far as the record of the proceedings shows, it was on file as a paper in the cause, and remained on file, as part of the judgment roll, for many years. The court recognized it as the answer, for it is recited in the judgment itself that the case was heard upon "complaint and answer," and that they formed the basis of the judgment, and the facts therein stated were those upon which the court acted. *Howerton v. Sexton,* 90 N. C., 581. The fact that the answer was not signed is a mere irregularity, perhaps an inadvertence, and does not affect the validity of the proceedings. We held in *Rollins v. Henry,* 78 N. C., 342, and *Keener v. Goodson,* 89 N. C., 273, that the provision requiring the signature of the judge to a judgment was merely directory, and the failure to sign would not invalidate it. *Howerton v. Sexton, supra.*

It is also objected that there was no personal service of the summons upon the plaintiffs, who, at the time, were infants, and no order appointing a guardian *ad litem* to defend the proceeding in their behalf. The omission to serve the infants with process is cured by Revisal, sec. 441, as we will hold that they were represented by a guardian *ad litem.* It sufficiently appears,

on the face of the record, that B. H. Sorsby, Jr., joined in the answer as guardian *ad litem* of the minor children of Tempie Ann Harris, who herself united with the other defendants in the answer, and it also appears that the court recognized B. H. Sorsby, Jr., as guardian *ad litem* for the infants, it having acted upon the answer as a pleading in the cause, upon which the judgment was in part based. In *Sumner v. Sessoms,* 94 N. C., 371, discussing as similar question, the Court said: "It is true the record produced does not show that notice was served on the infant, or upon her guardian *ad litem,* nor does the contrary appear in the record, which, so far as we have it, is silent on the point. The jurisdiction is presumed to have been acquired by the exercise of it, and if not, the judgment must stand, and cannot be treated as a nullity until so declared in some impeaching proceedings instituted and directed to that end. The irregularity, if such there be, may, in this mode, be such as to warrant a judgment declaring it null, but it remains in force till this is done. The voluntary appearance of counsel in a cause dispenses with the service of process upon his adult client. The presence of a next friend or guardian *ad litem* to represent an infant party, as the case may be, and his recognition by the court, in proceeding with the cause, precludes an inquiry into his authority in a collateral proceeding, and requires remedial relief to be sought in the manner suggested, wherein the true facts may be ascertained. This method of procedure, so essential to the security of titles dependent upon a trust in the integrity and force of judicial action, taken in the sphere of its jurisdiction, is recognized in *White v. Albertson,* 14 N. C., 241; *Skinner v. Moore,* 19 N. C., 138; *Keaton v. Banks,* 32 N. C., 384, and numerous other cases, some of which are referred to in *Hare v. Holloman, supra,* all of which recognize the imputed errors and imperfections as affecting the regularity, and not the efficacy, of the judicial action taken." *Hare v. Holloman,* 94 N. C., 14. And in *Hughes v. Pritchard,* 153 N. C., 135, we said: "In this State, where a defective or incomplete service upon such infants has been made, but a guardian *ad litem* has been appointed in substantial compliance with the requirements of section 406, Revisal, and the court has proceeded to judgment in the action

or proceedings, such defective or incomplete service upon the infants constitutes but an irregularity, which renders the judgment not void, but voidable only, which cannot be collaterally impeached, and which will not be vacated or set aside solely for such irregularity, when the rights of *bona fide* purchasers for value without notice have intervened. The reasoning which induced the holding that such defects rendered the judgment merely irregular, are stated with great force and clearness by *Ruffin, J.,* in speaking for this Court in *Sutton v. Schonwald,* 86 N. C., 198, which case has since been many times cited with approval." *Rackley v. Roberts,* 147 N. C., 204. In *Carter v. Rountree,* 109 N. C., 29, where it appeared that an infant was not personally served with process in a proceeding to sell lands for assets, but service was made upon his mother, and a guardian *ad litem* was appointed to protect his interests, who answered for him, it was held that the judgment would not be disturbed, as the irregularity was cured by the statute. Code, sec. 387; Revisal, sec. 448; *Cates v. Pickett,* 97 N. C., 21; *Fowler v. Poor,* 93 N. C., 466; *Coffin v. Cooke,* 106 N. C., 376; *Yarborough v. Moore,* 151 N. C., 116; *Williamson v. Hartman,* 92 N. C., 236; *Howerton v. Sexton,* 90 N. C., 581.

We have held in a series of cases that the court will not vacate an irregular judgment against an infant as of course, and it will not do so when it appears from the record or otherwise that the infant has suffered no substantial wrong, and the rights of innocent third parties, who have purchased for value and without notice, have intervened and will be prejudiced. *Syme v. Trill,* 96 N. C., 243; *Williamson v. Hartman, supra; Howerton v. Sexton, supra.*

This is an action to quiet title by declaring void the judgment, sale, and conveyance under which defendants deraign their title, and in that view of it the plaintiffs cannot collaterally assail the judicial proceedings for mere irregularity. It is not void on its face, as we have shown. If they wish to attack it for irregularity, it must be done by motion in the original cause. *Rackley v. Roberts,* 147 N. C., 201, and cases cited. As said in *Rackley v. Roberts:* "We do not think the special proceeding could be assailed by an independent action for mere irregu-

larity. The plaintiff should have proceeded by motion in the cause to set aside the judgment as to her. *Grant v. Harrell,* 109 N. C., 78; *Carter v. Rountree,* 109 N. C., 29. Before the adoption of the reformed procedure, in 1868, a judgment in a proceeding to sell land for assets would not be set aside upon the application of a minor who had not been served with process, provided a guardian *ad litem* to defend his interests had been duly appointed and there had been a real and *bona fide* defense in his behalf. *Hare v. Holloman,* 94 N. C., 14, citing *Matthews v. Joyce,* 85 N. C., 258, and other cases. See, also, *Cates v. Pickett,* 97 N. C., 21; *Sledge v. Elliott,* 116 N. C., 712. It was held in *Hare v. Holloman* that, where infant defendants are not served with process, but the record shows that a guardian *ad litem* was appointed for them, who proceeded in the cause and defended their interests, the decree against the infants is not void and cannot be collaterally impeached. This was said, of course, with reference to the practice prior to 1868," citing authorities. The same principle obtains at this time, since the enactment of the statute which is now Revisal, sec. 441, in cases to which that section applies. The record in this case, on its facts, shows that the court had jurisdiction of the cause and the parties, and that the decree authorized the sale of the land for assets. If in fact jurisdiction of the parties, that is, the infants, did not exist, they could have the judgment set aside in a direct proceeding, but not if the rights of an innocent purchaser, for value and without notice, who acted upon the apparent jurisdiction of the court, would be injuriously affected. He is only bound to see that the court had jurisdiction of the parties and the subject-matter of the proceedings, and that the judgment authorized the sale. He has the right to act upon appearances as disclosed by the record, although the facts may turn out to be different. *Fowler v. Poor,* 93 N. C., 466, and cases cited. A contrary doctrine would be fatal to judicial sales and the value of titles derived under them, as no one would buy at prices at all approximating the true value of property, if he supposed that his title might at some distant day be declared void because of some irregularity in the proceeding, altogether unsuspected by him and of which he had no opportunity to inform himself.

*Sutton v. Schonwald,* 86 N. C., 198; *Rackley v. Roberts, supra.*

We may well repeat here what is said in *Rackley v. Roberts,* 147 N. C., at p. 207, with respect to the facts of that case, which is much like this: "While it may not be necessary to the decision of this appeal, as we view it, to consider what may be the rights of Mrs. Roberts, as an innocent purchaser, for all the facts in regard to that·question are not now before us, it may be well to refer again to the general doctrine settled by this Court, to the effect that, when· there is a purchase under an order or judgment, the purchaser need only inquire if upon the face of the record the court apparently has jurisdiction of the parties and the subject-matter, in order to be protected, provided he buys in good faith and without notice of any actual defect." The decision in that case was followed by a motion in the cause to set aside the judgment for irregularity, upon the ground that process had not actually been served upon one of the parties, and with reference· to somewhat similar facts in that case (*Glisson v. Glisson,* 153 N. C., 185), when it was brought to this Court by appeal, *Justice Brown* said: "It is true that courts have power to correct their records and set aside irregular judgments at any time, but it is settled practice that they will not exercise the power where there has been long delay or unexplained and unwarranted laches on the part of those seeking relief against the judgment. *Harrison v. Hargrove,* 109 N. C., 346; *Carter v. Rountree, supra.* The decree was made 9 February, 1883, and this motion made 16 December, 1908. The administratrix had died and a quarter of a century elapsed before the petitioners moved in this cause. This is certainly a most unreasonable delay, and we are unable to discover anything in the record which excuses it. Coverture is no excuse, and even that would not help Theodocia Spellman, who became discovert in 1885. Not only do petitioners fail to offer any satisfactory excuse for such laches, but they fail to allege meritorious grounds for the relief asked. It is true, they vaguely allege in their petition, 'That there were very few valid and *bona fide* debts against the estate of the said Daniel Glisson, and this affiant verily believes that the personal property would have paid said debts.' But on the hearing they offered no evidence whatever to the court in sup-

HARRIS *v.* BENNETT.

port of such belief, and nothing to show that they had any defense against the original petition to sell the land for assets, even if the decree should be set aside and petitioners permitted to answer. They offered nothing tending to controvert the allegations of the original petition. Unless the Court can now see reasonably that defendants had a good defense, or that they could make a defense that would affect the judgment, why should it engage in the vain work of setting the judgment aside? *Jeffries v. Aaron,* 120 N. C., 169; *Cherry v. Canal Co.,* 140 N. C., 423." *Williamson v. Hartman,* 92 N. C., 236.

As plaintiffs are remaindermen, a suit to recover possession of the land, as in one aspect this one is, would not be affected by the statute of limitations until after the expiration of the life estate (*Joyner v. Futrell,* 136 N. C., 301; *Hallyburton v. Seagle,* 130 N. C., 482; *Woodlief v. Webster,* 136 N. C., 162; *Smith v. Proctor,* 139 N. C., 314), but a proceeding to vacate the judgment does not rest upon the same principle. It may be instituted by a party to the judgment, or one apparently a party and who may be prejudiced by it, at any time, so that action is taken seasonably and laches cannot be imputed to the complaining party.

In this case, it appears that the grounds upon which the prayer for relief is predicated are purely technical, and not at all meritorious. The estate of Mr. Arrington was hopelessly insolvent, his indebtedness far exceeding the value of the estate left to him after the ravages of the war. The last sale of the Culpepper place was made by Mr. Bunn, the administrator, in October, 1877—thirty-five years ago—and defendants having purchased in good faith and for full value, as the court found and adjudged, entered into possession and improved the land and established their home upon the premises. Plaintiffs had no meritorious defense to the proceeding in which the sale of the land was decreed, and if for any cause, sufficient in law, the judgment should be set aside, the land would have to be resold to pay the testator's debts, the amount of which has been greatly increased by the accumulated interest. Besides, there is nothing to show that the interests of the minors were not properly safeguarded in the proceeding. Their mother, who had the life

estate in the land under her father's will, seeing that the land must inevitably be sold to pay his debts, submitted to the decree, as did all the other heirs, who had interests more valuable, perhaps, as would appear, than those of the infants, as their estates had vested in possession. If any case should be governed by the strict application of the principle we have stated, this is the one. It would be vain, indeed, if we should disturb the judgment under such circumstances, if not most unjust and inequitable.

The case was considered and decided by the learned judge upon the record alone, a bare inspection of it, as upon the plea of *nul tiel record*, and even in that view of it, we conclude that there was error. As there is no ground upon which the plaintiffs can succeed in the action, it should have been dismissed, and that course will be taken in the court below.

Reversed.